This is an action for declaratory and injunctive relief and damages. Plaintiffs Max and Ila Davidson own a mobile home park that receives electric power from defendant, Marshall-DeKalb Electric Cooperative. When Marshall-DeKalb changed its billing practice so that the Davidsons would be responsible for the electric bills of the residents of the mobile home park, the Davidsons and one of their tenants brought this suit. They alleged that the new billing practice violated the electric power contract between Marshall-DeKalb and the Tennessee Valley Authority (TVA). The trial court entered judgment for Marshall-DeKalb, holding that the plaintiffs did not have standing to bring the suit because they were not intended third-party beneficiaries of the TVA/Marshall-DeKalb contract.
Prior to October 27, 1982, each mobile home resident in the Davidsons' park applied for an electric meter and service in his own name and was billed monthly in his own name for that service. On October 27, 1982, Marshall-DeKalb mailed a letter to plaintiff Max Davidson setting out changes in the procedures for billing its customers in mobile home parks. The new procedures required that all electric service to a mobile home park be in the name of the park owner and be billed to him. Park owners were given two choices: (a) a single meter for the lot, with all equipment beyond the meter to be paid for by the park owner; or (b) individual meters at the lots installed and billed in the name of the park owner, with all wiring in the park installed and owned by the park owner. Marshall-DeKalb explained the procedures under plan (b), assuming the park owner would choose that plan.
Davidson was told that he would have to pay a $5 membership fee and a $300 deposit, with more deposits possibly due in the future; that a $10 service connection would be charged for each new lot given service; and that service to a lot would be considered permanent, not subject to cancellation as tenants moved out. The new procedures were to apply immediately to lots added to service and to all lots after March 1983. Davidson was to be responsible for all bills after the April 1983 meter readings, and a delinquent account at one lot would stand as a delinquency against the whole park.
In December 1983, plaintiff Arlett Portwood and her husband moved onto the *Page 1060 
Davidsons' mobile home park. She went to Marshall-DeKalb's office and attempted to establish electric service in her name or her husband's name. Service was refused to the Portwoods based on the new procedures outlined above. Electric service was set up for the Portwoods in the name of Max Davidson. The bills were sent to Davidson, who paid the bill monthly and collected from the Portwoods, adding a 5% surcharge.
The Davidsons and Arlett Portwood sued for a declaration that the proposed changes in billing practices would violate, inter alia, the terms of the TVA/Marshall-DeKalb contract; for an injunction prohibiting Marshall-DeKalb from changing the manner of providing and billing for electric power; and for damages.
The contract between Marshall-DeKalb and TVA includes the following provisions:
 "Purpose of Contract. It is hereby recognized and declared that, pursuant to the obligations imposed by the TVA Act, Cooperative's [Marshall-Dekalb's] operation of an electric system and TVA's wholesale service thereto are for the benefit of the consumers of electricity.
". . . .
 "Submetering. Cooperative shall not sell electricity for submetering or resale."
Plaintiffs contend that plan (a) would constitute sale for submetering and plan (b) would constitute sale for resale. Marshall-DeKalb responds by saying that plaintiffs have no standing to bring the action because they are not intended third-party beneficiaries of the TVA/Marshall-DeKalb contract. The trial court so held.
A person not a party to a contract may sue one of the parties for breach of the contract as a third-party beneficiary of the contract only if the contract was intended for the direct benefit of persons in plaintiff's situation, not their incidental benefit. Holley v. St. Paul Fire Marine Ins. Co.,396 So.2d 75 (Ala. 1981); Harris v. Board of Water SewerCommissioners of the City of Mobile, 294 Ala. 606,320 So.2d 624 (1975).
We point out initially that there was no error in the judgment with respect to Arlett Portwood, because she was no longer a tenant of the Davidsons or a customer of Marshall-DeKalb at the time of trial. Although the complaint includes a claim for damages, the allegations would support awards of damages only in favor of the Davidsons. Therefore, Portwood was properly held not to have standing to seek the declaratory and injunctive relief requested.
With respect to the Davidsons, Marshall-Dekalb argues that they are not consumers of electricity and so do not come within the clause of the contract stating that it is for the benefit of the consumers of electricity.
Marshall-DeKalb's argument cannot succeed. For purposes of billing convenience and accountability, it says the Davidsons are its members and its customers, consuming and paying for the electricity it provides to their mobile home park. For purposes of the submetering/resale restriction, it says the park residents are the consumers of its electricity. The TVA is a quasi-governmental agency providing electricity for the public's benefit. See the Tennessee Valley Authority Act of 1933, 16 U.S.C. § 831 et seq. (1982). Marshall-DeKalb is a "cooperative, nonprofit, membership corporation" similarly invested with a public purpose. Code 1975, § 37-6-2. It is inconsistent for Marshall-DeKalb to sell electricity to its members and then state that its members are not the ultimate consumers of its electricity. By making the Davidsons financially responsible for the electricity, Marshall-DeKalb precludes itself from arguing that the Davidsons are not intended third-party beneficiaries of its contract with the TVA, from which it obtains electricity.
Marshall-DeKalb argues that because of the "demonstrated impermanent residence" of mobile home residents, a reversal would, by extension, require it to supply meters for individual motel rooms and bill the transient *Page 1061 
guests, not the motel owner. This argument is without merit. The record indicates that the Davidsons operate not an overnight campground, but the type of facility where individuals tow their mobile homes to the designated lots, moor them to foundations, connect them to utilities, and set up residence. A more apt conclusion would be that an affirmance would allow Marshall-DeKalb to require apartment owners to become members and resell electricity to their tenants. We make these remarks only with respect to whether the Davidsons are consumers of electricity for purposes of the standing issue; we make no judgment at this stage of the proceedings as to whether Marshall-DeKalb's new procedures are prohibited under the TVA/Marshall-DeKalb contract.
Marshall-DeKalb also argues that the real purpose of the submetering restriction is to protect the TVA from unexpectedly high demands if cooperatives were allowed to resell large quantities of relatively inexpensive TVA electricity to other utilities, and that the restriction has no application to a case like this one. This argument to the merits should be addressed to the trial court after a fuller development of the case. For purposes of the Davidsons' standing, we see a sufficient likelihood that the provision could also be construed to protect consumers from the kind of procedures that Marshall-DeKalb is attempting to impose upon mobile home park owners.
For the foregoing reasons, the judgment is due to be, and it is hereby, reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON, BEATTY and HOUSTON, JJ., concur.