SHORES, Justice.
The original suit, which prompted this declaratory judgment action, was by Wilson and Karen Johnson and. five other property owners who bought their respective properties from Ladner Construction Company, Inc. (Ladner). The plaintiffs in the original action brought suit against Ladner[1] and the City of Mobile claiming $500,000 damages for injuries and damages allegedly suffered by them when their homes, which were constructed and sold to them by Lad-ner, flooded. The complaint alleges that the City of Mobile and Ladner conspired to build houses in an area which they knew to be flood prone and “misled” Johnson and the other plaintiffs into purchasing these homes. The complaint also alleges, in addition to the conspiracy theory, that Ladner “. . . [Kjnowing that said property would flood, did construct residential houses on said property and did sell and convey said property to the Plaintiffs, who were unaware that said real property would flood and cause them damage and injury and by reason thereof, the Plaintiffs claim compensatory and punitive damages in the amount aforesaid ...”
Attached to that complaint is a copy of the City of Mobile’s Flood Control Ordinance, copies of extracts of several meetings of the City Commission relative to its decision to allow Ladner to build a house on one of the lots in question, with the proviso that Ladner provide flood insurance and to hold the City harmless in the matter. The indemnity agreement which Ladner executed contained the following language;
“WHEREAS [Ladner] desire[s] to build or improve said parcel in full knowledge that such building, structure or improvement probably will be inundated at some future time, with resultant damages to the improvements sought to be built

“. . . [I]n full knowledge of probable damage due to occur from said inundation from conditions as they now exist, do hereby release . . . and agree to hold harmless, the City of Mobile . . ”
*102 Pursuant to the agreement with the City, Ladner first obtained insurance from Fidelity and Casualty Company of New York, which policy covered the period from April 1, 1974, to April 1, 1975. Insurance was procured from Southern Guaranty covering the period from April 1, 1975, to April 1, 1976.
When the lawsuit was served on Ladner, it called upon both companies to defend. Both denied coverage and Southern Guaranty initiated this action for declaratory judgment. It also sought an injunction against further proceedings in the damage suit pending a declaration of rights under its policy. The declaratory judgment action named Fidelity and Casualty as a party. The trial court granted the injunction. Thereafter, both companies filed motions for summary judgment, based upon the pleadings, interrogatories and depositions. The trial court then granted the motions for summary judgment, holding that neither Southern Guaranty nor Fidelity and Casualty was obligated to defend Ladner in the damage suit or to pay any judgment rendered therein.
The policy provisions in both of the two policies are identical:
“The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
“A. bodily injury or
“B. property damage
“to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company’s liability has been exhausted by payment of judgments or settlements.”
The word “occurrence” is defined in both policies as follows:
“ ‘occurrence’ means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.”
Both insurance companies insist that the allegations charged in the complaint against Ladner do not constitute an “occurrence” as defined in their policies. They contend that the complaint charges Ladner only with knowingly building and selling homes that would flood, and that does not represent an occurrence as defined in the policy. In fact, they say, as characterized in the complaint, the “knowing” actions charged to Ladner resulted in property damage that clearly must have been “expected.” It is their contention that the allegation “knowing that said property would flood” is a stronger characterization than an allegation “expecting that said property would flood.”
The issue before us, therefore, is whether the qualifying clause in the definition of occurrence, “neither expected nor intended from the standpoint of the insured” operates to excuse the insurer’s duty to defend where the only theories of recovery alleged in the complaint charge the insured with intentional acts.
It is well established that the insurer’s duty to defend is more extensive than its duty to pay. If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured. Goldberg v. Lumber Mutual Casualty Ins. Co., 297 N.Y. 148, 77 N.E.2d 131 (1948). It is also generally the rule that the obligation of a liability insurer, under a policy requiring it to defend its insured in an action brought by a third party, is determined by the allegation of the complaint in such action. Bituminous Casualty Corporation v. Bartlett, Minn., 240 N.W.2d 310 (1976); Argonaut *103 Southwest Insurance Co. v. Maupin, Tex., 500 S.W.2d 633 (1973); 50 A.L.R.2d 499.
This court, however, has rejected the argument that the insurer’s obligation to defend must be determined solely from the facts alleged in the complaint in the action against the insured. In Pacific Indemnity Company v. Run-A-Ford Company, 276 Ala. 311, 161 So.2d 789 (1964), Justice Coleman, speaking for the court, held:
“. . . We are of opinion that in deciding whether a complaint alleges such injury, the court is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence . . . .” (276 Ala. at 318, 161 So.2d at 795)
The court went on to state that when the allegations of the complaint show that the injury alleged is not within the coverage of the policy, other facts which did exist but were not alleged, could be taken into consideration. The court also noted that the policy in that case did not provide which procedure should be followed; but, under those circumstances, it should be liberally construed in favor of the insured, and that construction permitted the court to look to facts outside the bare allegations of the complaint.
Although that rule has been established in Alabama, there is nothing in the record before us, looking beyond the allegations of the complaint, to indicate that the plaintiffs in the lawsuit against Ladner are asserting any theory of liability other than that Ladner knowingly sold them lots that flooded.
Thus, as presently postured, the claims of the plaintiffs against the insured charge intentional acts of the insured and, therefore, do not charge the insured with acts covered in the policy which limits the insurer’s duty to defend to acts “which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.”
In Grand River Lime Co. v. Ohio Casualty Insurance Co., 32 Ohio App.2d 178, 289 N.E.2d 360 (1972), a suit was brought against the insured alleging in the second cause of action acts on the part of the insured which “. . . ‘constitute willful and intentional misfeasance and malfeasance on the part of the defendants, and that the defendants have intentionally, willfully and wantonly conducted their manufacturing operations in such a manner as to injure the property rights of others * *’ ” (289 N.E.2d at 363)
There the court said that such allegations asserted knowledge and willful intent of the defendant and held:
“. . . [Tjhat the defense of the second cause of action could not be required under the definition of ‘occurrence’ as contained within the policy. Such allegations would not constitute a claim for damages ‘neither expected nor intended from the standpoint of the insured.’ ” (289 N.E.2d at 363, 364)
The language of the policy involved in Grand River is identical to that contained in the two policies involved here.
We hold, therefore, that as presently postured, the defendant insurance companies are not presently required to defend the lawsuit pending against Ladner. The allegations of their complaint allege only intentional acts by Ladner; and nothing in the record before us indicates that any other theory of liability is asserted. True, Ladner denies knowing that the lots it sold to the plaintiffs would flood, but that is a matter to be determined in the lawsuit. Its denial in no way changes the nature of the claim made by the plaintiffs.
In holding that the insurance companies have no present obligation to defend the suit against their insured, we must also point out, as has been so succinctly stated by Judge Learned Hand in Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 752, 753 (2d Cir. 1949):
“. . . [T]he injured party might conceivably recover on a claim, which, as he had alleged it, was outside the policy; but which, as it turned out, the insurer was bound to pay. Such is the plasticity of modern pleading that no one can be *104 positive that that could not happen. In such a case of course the insurer would not have to defend; yet, even then, as soon as, during the course of the trial, the changed character of the claim appeared, we need not say that the insured might not insist that the insurer take over the defence. . . . ”
Under the present Alabama rules of procedure, it is quite possible that the character of the plaintiffs’ claim against Ladner may change, as Judge Hand noted, even during the course of the trial; and, of course, the plaintiffs’ complaint may be amended even after the evidence is in to conform to that evidence. Because that is so, the insurers should be mindful that:
“It is clear that where a claim potentially may become one which is within the scope of the policy, the insurance company’s refusal to defend at the outset of the controversy is a decision it makes at its own peril. . . . ” Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484, 488 (1959).
In some jurisdictions, it has been held that the failure of an insurer to defend, relying on the allegations of the complaint against its insured, is a step taken at its own peril; and it does so at the risk of becoming liable to the insured for attorneys’ fees and expenses incurred by the insured in his defense in the event it ultimately develops that it has a duty to defend. Bandy v. Avondale Shipyards, Inc., 458 F.2d 900 (5th Cir. 1972).
Fidelity & Casualty Insurance Company, also an appellee, argues that the flooding of the properties apparently occurred during the month of November, 1975 (although the exact date of the loss is unknown), which date is after the expiration date of its policy. The complaint by the property owners was filed on February 26, 1976, and alleges “. . . [T]hat during the last twelve months, when there is substantial rain” the properties flood. It is impossible on the record before us to determine when the damage alleged in the complaint occurred. We cannot, therefore, on this record say that Fidelity is exonerated from liability because the alleged loss occurred after the expiration of its policy period. As noted, its policy covered the period from April 1, 1974, to April 1, 1975. The complaint was filed on February 26, 1976, and alleged damaged occurring during the past twelve months, which would include the period from February 26, 1975, to February 26, 1976, at least part of which falls within Fidelity’s period of coverage.
In granting summary judgments in favor of both insurance companies, the trial court held that neither company was obligated to defend their insureds, and also that neither company was obligated to pay any judgment which may be rendered in the lawsuit pending against Ladner.
We affirm the trial court’s holding that, as presently postured, neither company is obligated to defend the suit against Ladner. However, it cannot be determined at this stage that neither is obligated to pay any judgment which may be rendered against Ladner. If the plaintiffs change their theory of liability and assert a claim against Ladner which is covered by the policies, it is very possible that these insurance companies may well be obligated to defend Ladner and to pay any judgment which may be rendered against it.
The judgment of the trial court is, therefore, affirmed in part, reversed in part and remanded.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
MADDOX, FAULKNER, ALMON and BEATTY, JJ., concur.

. The suit named James F. Ladner and various Ladner Companies as defendants; but it is acknowledged that Ladner Construction Company, Inc. is the party actually involved in this case.