This is an appeal from a summary judgment in favor of Allstate Insurance Company (hereinafter "Allstate"). Allstate insured Jerry B. Tapscott in a "Deluxe Homeowner's Policy." Bennie H. Griffin, who had cut down a tree on land allegedly leased by Tapscott, sued Tapscott for 1) maliciously and falsely imprisoning, detaining, and arresting him and 2) intentional infliction of emotional distress. Allstate filed a separate action for a declaratory judgment on the issue of its responsibility to defend and indemnify Tapscott under the terms of the insurance policy. The trial court granted summary judgment and held, as a matter of law, that Allstate was not required to defend or indemnify Tapscott. We affirm.
On December 17, 1983, Griffin and his two children entered land in Morgan County. The land was owned by Vera Cunningham, but a lease agreement indicated that the land was leased to Billy Tapscott, Jerry's brother. Jerry Tapscott claims that he also leased the land, although his name was not on the written lease agreement.
Jerry Tapscott saw Griffin on the property and approached Griffin and his children. He asked Griffin what he was doing on the land and Griffin told him that he had come on the property to cut down a Christmas tree and had cut one. At that point, Jerry Tapscott, Griffin, and his children went to Jerry Tapscott's truck. When they arrived at the truck, Billy Tapscott was waiting there. Jerry Tapscott asked Griffin to go to the corner gas station so that he could call the sheriff. After leaving his driver's license with the Tapscotts, Griffin took his children home and then went back to the corner gas station, where a deputy sheriff was waiting.
Griffin admitted to the deputy sheriff that he had cut down the tree, but stated that he had permission from the owner, Vera Cunningham. At that point, one of the Tapscott brothers told Griffin that although he had had problems with Griffin's mother and brother, he did not have anything personal against Griffin, but he was going to file a complaint with the sheriff anyway. Nonetheless, Griffin was not arrested at that time. After talking with the Tapscotts and the deputy, Griffin got in his car and left.
A complaint was sworn out the following week. Griffin eventually was arrested and went to the jail and was fingerprinted, but he was never placed in a cell or handcuffed. He was released 30 to 45 minutes later, after he had posted a bond.
The case went to trial and Griffin was found not guilty. Griffin then sued both Tapscotts for maliciously and unlawfully detaining, arresting, and imprisoning him by force and against his will, and for intentional infliction of emotional distress. The only damages Griffin claims are for mental anguish.
Allstate filed a declaratory judgment action, seeking a declaration that it had no responsibility under its policy to defend and indemnify Jerry Tapscott. The trial court granted Allstate a summary judgment. This appeal followed.
Three issues are raised by the appellant:
1) Whether there was any evidence creating a genuine issue of material fact as to whether Tapscott had an intent to cause harm.
2) Whether there was any evidence creating a genuine issue of material fact as to whether Tapscott was "leasing" the premises.
3) Whether "mental anguish," absent any physical or bodily injury, constitutes "bodily injury, sickness, or disease" within the meaning of the insurance policy.
In order to prove coverage under the terms of the insurance policy, the insured would have to prove all of the following: 1) that the case did not involve an intentional tort; 2) that the incident occurred on insured premises; and, 3) that mental anguish *Page 572 
constitutes "bodily injury, sickness, or disease." We ultimately conclude that the trial court properly granted the summary judgment on the issue of intent; thus, there is no coverage under the terms of the policy, and we do not need to decide the other two issues raised by the appellants.
The materials presented to the trial court on motion for summary judgment included the allegations of intentional and malicious acts as set forth in the complaint; an affidavit by Jerry Tapscott stating that his acts were not intended to cause any harm; Griffin's deposition; and the Allstate insurance policy covering Jerry Tapscott, which stated in pertinent part:
 We do not cover bodily injury or property damage intentionally caused by an insured person.
This Court must first decide the applicable standard for determining whether the insurer must defend or indemnify the insured within the meaning of this insurance contract. Second, this Court must apply that test to the facts to determine whether summary judgment was properly granted by the trial court.
 I.
There is clearly no dispute over what allegations are made in the complaint at this stage. Furthermore, there is no question of whether Tapscott accidentally or negligently detained Griffin, called the deputy, or swore out a complaint. If there is any claim at all under the pleadings and evidence before the court at this time, it is a claim for an intentional tort. Nonetheless, although there is no disagreement over the fact that the complaint alleges only intentional torts, the parties do disagree over whether Jerry Tapscott actually intended to imprison, detain, arrest, or inflict emotional distress on Griffin. But that is a dispute that goes to the merits of the complaint rather than the issue in this case. Our only consideration is whether, based on the allegations in the complaint and other admissible evidence, the plaintiff alleges intentional conduct. Therefore, we do not need to, nor will we, consider the substantive issue of whether Jerry Tapscottactually intended the acts, nor do we consider the issue of whether there is any merit to Griffin's claims. We conclude that because there was no dispute over the fact that this case involved only claims for intentional conduct, summary judgment was appropriate.
Based on distinguishable facts, this Court has previously applied three different standards for determining whether an insurance company is required to defend and indemnify an insured. The first standard makes the subjective intent of the insured the controlling factor for determining whether the insurer is required to defend and indemnify. Alabama FarmBureau Mut. Cas. Ins. Co. v. Dyer, 454 So.2d 921 (Ala. 1984). In Dyer, the complaint alleged wrongful death, and the insurance contract stated:
This policy does not apply:
. . . .
 f. to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.
454 So.2d at 922. Pursuant to that clause, a subjective approach was required within the terms of the policy itself.
Applying that subjective standard, the trial court reasoned that because the insured did not intend, or would not have expected, to cause harm as a result of his conduct, the insurance company was required to defend and indemnify, regardless of the allegations in the complaint.
The second standard for determining an insurance company's responsibility to defend and indemnify is found in Ladner Co.v. Southern Guaranty Ins. Co., 347 So.2d 100 (Ala. 1977). InLadner, this Court interpreted a clause very similar to the one involved in Dyer, supra, but the complaint included claims for the intentional acts of conspiracy, misrepresentation, and knowingly building homes in a flood plain. Noting that "the insurer's duty to defend is more extensive than its duty to pay," 347 So.2d at 102, this Court nevertheless held that a court must look to the face of the complaint, as well as to facts that may be proven by admissible evidence, to determine whether an insurance company should be required to defend or indemnify an insured. Id. at 103, citing Pacific Indemnity *Page 573 Co. v. Run-A-Ford Co., 276 Ala. 311, 318, 161 So.2d 789, 795
(1964). Furthermore, this Court held that the insured's denial of the allegations in the complaint "in no way change[d] the nature of the claim made by the plaintiffs." Ladner,347 Ala. at 103. Because the complaint alleged only intentional torts, and because the evidence was consistent with the pleadings alleging intentional conduct, the trial court held that the insurer was not required to defend or indemnify the insured.
The third standard was applied in Allstate Ins. Co. v.Shirah, 466 So.2d 940 (Ala. 1985). In that case the insured was sued by a police officer whose car was hit by the insured while the officer was in pursuit of him. The complaint alleged negligent or wanton misconduct.[1] The insurance company moved for a declaratory judgment on the issue of its responsibility to defend, relying on the following clause in the insurance policy:
This coverage does not apply to liability for
. . . .
 (8) bodily injury or property damage caused intentionally by, or at the direction of, an insured person.
Shirah, 466 So.2d at 945. The trial court found insufficient evidence of intent and required the insurance company to defend and indemnify. On appeal, this Court considered the subjective standard applied in Dyer, supra, but concluded that because of the language in the insured's policy, as compared to the subjective "standpoint of the Insured" language in the Dyer
policy, the trial court only had to determine whether the insured intended to cause the collision. This Court affirmed the finding of the trial court, based on ore tenus evidence, and required the insurance company to defend and indemnify the insured.
In each of these three cases a different standard was applied in determining whether the insurance company was required to defend and indemnify the insured. However, the different standards and results are justified by the facts involved in each case. The instant case involves a fourth type of fact situation, and this Court must decide which of these three prior standards, if any, should be applied to determine the respective rights of each party pursuant to the insurance contract.
Although there are perhaps other distinctions between the three cases previously decided and the instant case, we compare and contrast these cases in two ways: first, depending on whether the complaint alleged an intentional or unintentional tort, and second, depending on the language in the insurance policy.
The primary and substantive distinction between this Court's approach in Dyer, supra, and its approach in Ladner, supra, is that in Dyer, the complaint did not allege an intentional tort, whereas the complaint in Ladner did allege intentional acts. InLadner, the Court looked to the face of the complaint and admissible evidence and concluded that the allegations and evidence involved only intentional conduct. Although the defendant denied intent, the Court determined that that was not relevant to the question of whether an insurer must defend the insured in a lawsuit claiming that the defendant intentionally caused harm, given the fact that the insurance policy excluded coverage for intentional conduct. The Ladner Court concluded that if a court could look to the complaint and admissible evidence and find allegations of intentional acts, that would be sufficient for the Court to conclude that there is no coverage for those allegations. Otherwise, the court would have to determine the actual intent of the defendant and that would require the Court to decide a substantive issue of the lawsuit in a declaratory judgment action.
In Dyer, supra, the complaint did not allege any intentional acts, rather, the insurer argued that the insured's conduct was intentional; thus, the insurer asserted that it was not responsible for defending and indemnifying pursuant to the contract. In that situation, where the insurer, rather than the plaintiff, argued "intent," any judgment by the trial court in a declaratory action between the insurer and the insured *Page 574 
would be separate and distinct from the underlying case; therefore, a declaratory judgment would not affect the substantive issues of the claim between the plaintiff and the insured.[2]
Finally, because of the language in the insurance policy inShirah, that case is distinguishable from both Ladner and Dyer
— the language in one policy required the court to determine intent from the "standpoint of the insured" and the other did not. Moreover, although the language of the insurance policy inShirah is virtually identical to the policy language in the instant case, there remains a major distinction between the facts in the two cases. In Shirah, the complaint alleged the unintentional torts of negligence and wantonness.[3] The complaint against Tapscott underlying the instant case alleged the intentional torts of false imprisonment and intentional infliction of emotional distress. Intent was not an issue in the case between the plaintiff and the defendant in Shirah;
therefore, in the declaratory judgment action in Shirah, the court only had to decide if the insured was "intentionally negligent." Conversely, an application of the Shirah standard to the instant case would require the court, in the declaratory judgment action, to determine if there was or was not specific intent. That is an issue that goes to the merits of the intentional tort claim and that would have to be proven by the plaintiff in order to recover. A judgment on the merits at this point — on a motion for a summary judgment in a declaratory judgment action — would be premature.
Taking all of these factors into consideration, we conclude that when a complaint alleges an intentional tort, the approach taken by this Court in Ladner, supra — looking to the allegations in the complaint, as well as available admissible evidence to determine the insurer's responsibility to defend and indemnify pursuant to the contract — is the best method of determining the responsibility of an insurer to defend and indemnify. Otherwise, the court would be required to decide the merits of the intentional tort claims prior to the litigation of the issues in the lawsuit.
However, particularly because of this State's liberal rules allowing amendments to a complaint, this approach is not without its faults. Pursuant to Rule 15(b), A.R.Civ.P., amendments are allowed even after a judgment to conform to the evidence presented. As a result, the allegations on the face of the complaint may not be the same issues and causes of action that are ultimately determined. Thus, what may have begun as a claim for an intentional act, which would not be covered by the insurance policy, could end as a claim for negligence, which would be covered by the insurance policy.
In any case, the initial determination of coverage is not absolutely binding. If the complaint initially alleges an intentional tort, but is later amended to include an unintentional tort, the insurer might be required to begin defending and to indemnify for that claim. Likewise, if the complaint initially alleged an unintentional tort, but was later amended to include an intentional tort, then the insurer, if it had reserved its right to withdraw, see Burnham Shoes,Inc. v. West American Ins. Co., 504 So.2d 238 (Ala. 1987), could discontinue its defense and would not be required to indemnify for the intentional acts. Furthermore, if a complaint alleges both intentional and unintentional acts, then the insurer would probably be required to defend and indemnify on the claims for unintentional acts.[4]
It should be noted, however, that an insurance company runs the risk of not participating and representing its interests throughout the course of the lawsuit when it decides not to defend a lawsuit because the complaint alleges only intentional torts *Page 575 
and the insurance policy excludes coverage for intentional acts. That is a risk the insurance company may choose to avoid by defending the insured regardless of the allegations in the complaint, but reserving its right to withdraw, and thus not indemnify, if the resulting judgment is for an intentional act. But, an insurance company using this approach should be certain that it makes its position clear to the insured. Otherwise, the right to withdraw may be waived. Burnham, supra.
 II.
In the instant case, the only allegations in the complaint are of intentional acts by Jerry Tapscott. The deposition of Bennie Griffin further establishes that the allegations in the complaint are for harm intentionally caused by the Tapscotts. The relevant portions of Bennie Griffin's deposition are set forth below:
 Q. Are you claiming that the acts were intentional?
A. Yes, sir.
 Q. Now, you don't believe that Jerry or Billy Joe acted maliciously toward you or your children in this action, do you?
A. Yes, sir, I do.
 Q. Okay. On what grounds to you base the maliciousness?
 A. Intentionally or unintentionally if you think it was malicious.
 Q. Oh, you think it could be unintentionally malicious in your opinion?
A. I believe it was intentional.
Q. To harm you?
 A. Well, it was me they swore out the warrant for so I would say yes.
 Q. Just one or two more questions. In your complaint you are claiming damages for certain wrongs or acts that were done to you by the Tapscotts. Is it the basis of your complaint or your contention that the Tapscotts intended to harm you personally?
A. Yes, sir.
In addition to the complaint, there is also an affidavit by Jerry Tapscott in which he denies all the allegations in the complaint.
Applying the rule enunciated in Ladner, supra, we conclude that Allstate is not required to defend or indemnify Jerry Tapscott. However, if the complaint is later amended to include claims for unintentional torts, then Allstate may be required to defend and indemnify for those claims. The fact that Tapscott filed an affidavit denying the allegations in the complaint in no way affects the nature of the plaintiff's claim for an intentional tort, and certainly, it has no bearing on Allstate's responsibility to defend or indemnify. See Ladner, 347 So.2d at 103.
Finally, we note that summary judgment was granted by the trial court in a declaratory judgment action between the insurer and the insured. Although at first glance it may appear that by affirming summary judgment on the intent issue this Court is making a judgment that is usually reserved for the jury, that is not the case. Summary judgment is due to be granted, based on the allegations in the complaint and available admissible evidence. There is no controversy between the parties concerning the fact that Griffin's complaint alleges only intentional torts, and, on the facts, there does not appear to be any other possible claim. This Court has made no determination of fact and does not pass judgment on whether the plaintiff's claims for intentional acts have any merit.
For the foregoing reasons, we conclude that, because of the way the claims are currently pleaded, the trial court properly granted summary judgment on the issue of Allstate's responsibility to defend or indemnify Jerry Tapscott.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur.
[1] The opinion did not state what claims were raised in the complaint; therefore, we have reviewed the record in that case to determine the causes of action raised in the complaint.
[2] It should be noted that this Court has previously held that the question of intent in that type of case would be one for a jury to decide in a declaratory judgment action. See HartfordFire Ins. Co. v. Blakeney, 340 So.2d 754 (Ala. 1976).
[3] This Court has previously held that the claim of "wantonness" does not require intent. See Gunnells v. Dethrage,366 So.2d 1104 (Ala. 1979); Rosen v. Lawson, 281 Ala. 351, 202 So.2d 716
(1967); Maffett v. Roberts, 388 So.2d 972 (Ala. 1980).
[4] Note, however, that the standard enunciated in Shirah,466 So.2d 940, would apply to a complaint alleging unintentional acts; therefore, the court may ultimately conclude that the insurer would not have to defend and indemnify. *Page 576