Edward E. HANCOCK, Cynthia A. Hancock, Plaintiffs–Appellants,

v.

NEW YORK LIFE INSURANCE COMPANY, et al., Defendants–Appellees.

No. 89–7331.

United States Court of Appeals, Eleventh Circuit.

April 30, 1990.

---

John E. Pilcher, Pilcher & Pilcher, Selma, Ala., for plaintiffs-appellants.

William Dudley Motlow, Jr., Birmingham, Ala., for defendants-appellees.

Before FAY and COX, Circuit Judges, and ESCHBACH [*], Senior Circuit Judge.

COX, Circuit Judge:

Appellants Edward and Cynthia Hancock appeal from the district court's grant of summary judgment in favor of appellee New York Life Insurance Company (New York Life). For reasons set forth below, we affirm in part and reverse in part.

## FACTS

In 1974, New York Life issued a "guaranteed renewable master hospital expense policy" to Mr. Hancock. The policy contained a provision entitled "conversion privilege for covered dependent children," which provided that any dependent child whose coverage terminated because he attained his twenty-third birthday would be entitled to have issued, without evidence of insurability, a policy of insurance simply by applying for it and paying the first premium within thirty-one days after termination of coverage. The conversion privilege further stated:

---

[*] Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

The conversion policy shall be on a form then customarily being issued by the company in connection with such conversions and shall provide benefits which correspond most closely to those provided in this policy for the covered dependent child but in no event will the benefits be less than the benefits required by any applicable law in effect at the time this policy is issued.

Mr. Hancock's daughter, Cynthia, was a covered family member under this policy of insurance because she was a thirteen year old dependent minor at the time the policy was issued to Mr. Hancock.

In 1978, Cynthia was seriously injured in an automobile accident that rendered her totally and permanently disabled. As a result of the accident, many claims were filed under Mr. Hancock's policy. New York Life routinely paid these claims. In 1981, because of her disability, Cynthia became a Medicare beneficiary pursuant to the terms of the Social Security Act.

Prior to Cynthia's twenty-third birthday, Cynthia exercised the policy's conversion privilege. Pursuant to this privilege, she applied to New York Life for a "hospital and surgical expense policy" and one was issued in her name. This policy contained the following exclusion not present in Mr. Hancock's policy: "This policy does not cover, and no payment shall be made because of any of the following: ... (c) Charges reimbursed under any hospital, surgical, or other medical care plan established by a national, state, or local government." Because Cynthia was a Medicare recipient, this exclusion had the effect of substantially reducing her benefits under the conversion policy.

Cynthia filed only one claim under this policy in the three year period following its issuance. New York Life denied the claim under Cynthia's policy on the ground that it arose out of a hospitalization which began prior to the effective date of the conversion policy. Over the Hancocks' objection, New York Life paid this claim entirely under Mr. Hancock's policy. In 1986, Cynthia exercised an option to increase her benefits under the conversion policy. Cynthia then submitted another claim under her policy the following year. New York Life paid the claim; however, it later informed Cynthia that the payment was made by mistake and requested that she refund the amount paid. It was New York Life's contention that the claim involved charges reimbursed by Medicare; it was thus expressly excluded from coverage under Cynthia's conversion policy. New York Life has paid no other claims filed by Cynthia under her conversion policy.

Mr. Hancock and Cynthia sued New York Life in state circuit court alleging breach of contract, fraud and misrepresentation, bad faith refusal to pay insurance benefits and estoppel. They basically contend that New York Life breached its agreement to provide Cynthia with a policy containing benefits similar to Mr. Hancock's policy and that the New York Life agent who sold the conversion policy to them misrepresented that this would be the case. The plaintiffs sought reformation of Cynthia's conversion policy and monetary damages. New York Life removed the case to federal court and filed a motion for summary judgment, which the district court granted on all counts. The district court held that the applicable statute of limitations barred their fraud claim, that Mr. Hancock lacked standing to sue, and that the Hancocks presented no evidence to support their breach of contract claim. The district court also denied the Hancocks' motion for leave to amend their complaint to add a claim that New York Life suppressed material facts in selling Cynthia both the conversion policy and the option to increase coverage.

## DISCUSSION

### A. FRAUD CLAIM

The district court granted New York Life's motion for summary judgment on the fraud claim on the ground that it was barred by the applicable two year statute of limitations period set forth in Ala.Code

§ 6–2–38.[1] The court reasoned that this cause of action accrued at the time the conversion policy was issued—more than two years before the suit was filed—because under Alabama law, the Hancocks had a duty to read the contract policy then provided to them. The district court rejected the Hancock's argument that the conversion policy should be analogized to a renewal policy, which falls within an established exception to the general rule obligating a party to read his contract. *See Woodlawn Fraternal Lodge 525 v. Commercial Union Ins.*, 510 So.2d 162 (Ala. 1987).

■ We affirm the result reached by the district court with respect to this fraud claim but for different reasons. *See Securities and Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943) (decision of lower court must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason). In order to prevail on their claim for misrepresentation, the Hancocks must prove that they relied on a misrepresentation of a material fact and that they suffered damages as the proximate result of their reliance on that misrepresentation. *Torres v. State Farm Fire & Cas. Co.*, 438 So.2d 757, 758 (Ala.1983). In this case, the plaintiffs admit that at the time Cynthia exercised the conversion privilege, she was uninsurable. Given Cynthia's permanent physical disability, she could not have obtained medical insurance elsewhere.[2] In view of this fact, even if the Hancocks relied on a misrepresentation of New York Life's agent in exercising this conversion privilege, they cannot demonstrate that they suffered any damage as the result of their reliance.[3] New York Life was thus properly granted judgment as a matter of law on the Hancocks' fraud claim.[4]

## B. CONTRACT CLAIM

Before we address the merits of the contract claim, we consider whether the district court erred in holding that Mr. Hancock had no standing to sue New York Life for breach of contract.[5] According to the district court, under Alabama law a " 'third party must directly, as opposed to indirectly or incidentally, benefit from the performance of the contract' " to maintain an action for its breach. R1–24–9 (quoting *Smith v. Equifax Services, Inc.*, 537 So.2d 463 (Ala.1988)). Finding that Mr. Hancock was neither a party to the conversion policy, nor a direct beneficiary under the policy, nor legally obligated to pay the policy premiums or his daughter's medical expenses, the district court held that any benefit Mr. Hancock derived from performance of the conversion contract was strictly incidental and insufficient to satisfy the *Smith* direct benefit standard.

■ We disagree and hold that Mr. Hancock has standing to sue New York Life

---

1. Ala.Code § 6–2–38 (1975 & Supp.1989) sets forth a two year statute of limitations for claims of fraud and misrepresentation.

2. As a minor dependent, Cynthia was also insured under a policy of insurance issued to her mother, Erma Hancock, by Liberty National Life Insurance Company. This policy contained a similar conversion privilege, enabling Cynthia to convert to an individual policy after coverage under her mother's policy terminated because of Cynthia's age. Cynthia elected to exercise this option and thus was insured under this policy as well. The nature and extent of Cynthia's coverage under this policy does not appear from the record.

3. The only damage the Hancocks possibly have suffered is the cost of the monthly premiums paid for Cynthia's individual policy. We note that the Hancocks asked for $2,500,000.00 as actual and punitive damages on this claim, which is substantially more than the amount paid as monthly premiums. Plaintiffs' counsel conceded at oral argument that they are not relying on the cost of the premiums as their damages on this claim. Moreover, the Hancocks have never taken the position that the conversion policy is entirely worthless.

4. In view of our holding that the Hancocks cannot prevail on their fraud and misrepresentation claims as a matter of law, the district court did not abuse its discretion in refusing to allow the Hancocks to amend their complaint to add a fraudulent suppression claim.

5. The Hancocks also argue that the district court erred in holding that Mr. Hancock had no standing to sue for fraud and misrepresentation. In light of our resolution of the fraud claim on the merits, we need not consider this issue.

for breach of contract. Mr. Hancock's original policy of insurance contained the conversion privilege for dependent children, which stated, *inter alia*, that the conversion policy shall be on a form then being issued by New York Life and shall provide the benefits which correspond most closely to those in the original policy. As clearly set forth in their complaint, plaintiffs contend that when New York Life issued Cynthia a conversion policy that was not identical to Mr. Hancock's original policy, New York Life breached this provision of *the original policy. See* Complaint at 3, paragraph 9; Complaint at 4, paragraph 12. The district court thus misconstrued the nature of the Hancocks' claim. Plaintiffs allege a breach not of Cynthia's conversion policy but of Mr. Hancock's original policy.[6] Viewed in this light, Mr. Hancock clearly has standing to maintain this action: he was a party to the contract and directly benefitted from its performance.

We next consider the merits of this contract claim. The district court held that the evidence presented in the case failed to establish that New York Life breached the conversion privilege provision. According to the district court, the Hancocks offered no evidence to indicate that the conversion policy was not on a form then being issued by New York Life. The Medicare exclusion unambiguously excluded charges reimbursed by Medicare; New York Life thus had no obligation to pay such claims.

We disagree with the district court's resolution of this issue and hold that it erred in entering summary judgment against the Hancocks on this claim. Under Alabama law, whether or not a provision of an insurance policy is ambiguous

and unclear is a question of law for the court. *Upton v. Mississippi Valley Title Ins. Co.,* 469 So.2d 548, 553 (Ala.1985); *Aetna Life Insurance Co. v. Hare,* 47 Ala. App. 478, 256 So.2d 904, 911 (1972). We have reviewed the conversion privilege provision which forms the basis of this claim and conclude that it is ambiguous[7]: as the Hancocks contend, it could be construed as guaranteeing the dependent who exercises the privilege coverage similar to that the parent received under the master policy; alternatively, as New York Life contends, it could be construed as providing the dependent only with the benefits contained in the conversion policy then being issued by New York Life at the time the privilege is exercised—irrespective of how limited such coverage might be. *See Moore v. John Hancock Mutual Life Ins. Co.,* 436 F.2d 823 (5th Cir.1971) (holding a similar provision in an employee's group life insurance policy ambiguous under Florida law); *Baker v. Washington National Ins. Co.,* 823 F.2d 156 (5th Cir.1987) (holding that provision in group health policy which allowed an individual to convert the group policy to "then current conversion policy" was ambiguous and that "insurer's use of general language agreeing to convert imports a promise to continue basic coverage"). Ambiguities in insurance contracts are construed against the drafter.[8] *Aetna Life,* 256 So.2d at 911.

### C. ESTOPPEL CLAIM

The Hancocks also argue that the district court erred in entering summary judgment against them on their estoppel claim. We affirm the result reached by the district court but for different reasons.

---

6. Under Alabama law, a parent has the obligation to support his disabled child beyond the child's minority. *Ex parte Brewington,* 445 So.2d 294, 297 (Ala.1983).

   Although neither party contends otherwise, we note that Cynthia also has standing to maintain this action as an intended third-party beneficiary of the contract. *See Davidson v. Marshall–DeKalb Electric Coop.,* 495 So.2d 1058 (Ala.1986).

7. The Hancocks' complaint and New York Life's motion for summary judgment squarely present this issue to the district court.

8. If an ambiguous and unclear policy can be interpreted from the writing itself, it is the province of the court to construe the policy. *Aetna Life,* 256 So.2d at 911. However, if the policy can be construed only with the aid of evidence aliunde or facts in pais, it is the province of the jury to ascertain those facts and draw inferences therefrom. *Id.* (quoting *Air Conditioning Engineers v. Small,* 259 Ala. 171, 65 So.2d 698 (1953)). This issue has not been briefed on this appeal and is left for the district court on remand.

**1136**

*See Chenery Corp.,* 318 U.S. at 88, 63 S.Ct. at 459. To prevail on their claim for estoppel, the Hancocks must demonstrate that they suffered some detriment as the result of their reliance on New York Life's words or deeds. *Reynolds v. Four Seasons Condominium Ass'n.,* 462 So.2d 738 (Ala.Civ. App.1984). As previously discussed, Cynthia was uninsurable and thus incurred no damage as the result of New York Life's alleged representations. Accordingly, New York Life was entitled to a judgment as a matter of law on this claim.

## CONCLUSION

We REVERSE the district court's grant of summary judgment on the Hancocks' breach of contract claim and REMAND to the district court for proceedings consistent with this opinion. We AFFIRM on all other issues.