**UNIVERSAL UNDERWRITERS INSUR-
ANCE COMPANY, a Stock Insurance
Company, Plaintiff–Appellant,**

v.

**STOKES CHEVROLET, INC., James
H. Stokes; Kirk A. Stokes,
Defendants–Appellees.**

No. 91–7977.

United States Court of Appeals,
Eleventh Circuit.

May 10, 1993.

Bibbs Allen, Rives & Peterson, Rhonda K. Pitts, Birmingham, AL, for plaintiff-appellant.

Lee Copeland, George W. Walker, III, Montgomery, AL, for defendants-appellees.

---

* Hon. Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. James and Kirk Stokes were listed as co-insureds under SCI's insurance policy and are

Before BIRCH, Circuit Judge, JOHNSON, Senior Circuit Judge, and THOMAS *, Senior District Judge.

JOHNSON, Senior Circuit Judge:

This diversity case arises on appeal following the district court's entry of judgment in favor of the defendant-appellee Stokes Chevrolet, Inc. ("SCI") on claims arising under SCI's multiple coverage insurance policy. The plaintiff-appellant Universal Underwriter Insurance Company ("Universal") brought this action seeking a declaratory judgment that the insurance policy's liability coverage did not extend to an action brought against SCI by one of its competitors for intentional interference with contractual and business relations. The district court concluded that the insurance policy required Universal to defend and provide coverage for the intentional interference claim. On appeal, Universal argues that the district court misconstrued the provisions of the insurance policy in finding coverage and a duty to defend. For the reasons that follow, we agree that the district court erred in its construction of the insurance policy and we therefore reverse.

## I. STATEMENT OF THE CASE

### A. *Factual Background*

SCI is an automobile dealership in Clanton, Alabama, owned and operated by the father and son team of James and Kirk Stokes.[1] In January of 1987, SCI sales manager and long-time employee Ben Atkinson informed SCI that he was leaving SCI to start his own automobile dealership in the neighboring Elmore County area. SCI originally encouraged Atkinson in his endeavor, and assisted him in setting up his new business. In return for the assistance, James and Kirk Stokes testified that Atkinson promised them that he would not advertise in the Clanton area.

named as co-appellees in this action. For convenience, our references to "SCI" will denote all of the appellees collectively.

In March of 1987, James and Kirk Stokes began to notice Atkinson advertisements appearing in Clanton's local newspaper, the *Independent Advertiser* (the "*Advertiser*"). The Stokeses complained about the advertisements to *Advertiser* employee Mike Kelley. The Stokeses told Kelley that SCI was "getting lost in the shuffle" of all the newspaper's automobile dealership ads, and warned that SCI would consider taking its own advertising business elsewhere unless the *Advertiser* quit running ads for Atkinson.

Kirk Stokes followed up the conversation with a letter to Kelley, dated June 19, 1987, "to confirm our conversation regarding advertising by Ben Atkinson Motors ... in the Clanton area." The letter characterized the Atkinson advertisements as "unfair" to SCI and accused Atkinson of "undercutting" SCI in its market.[2] The letter concluded, "Your cooperation in this matter will be highly appreciated." Shortly thereafter, the *Advertiser* allegedly severed its relationship with Atkinson and refused to allow Atkinson to purchase any more advertising space in the newspaper.

On May 13, 1988, Atkinson filed a complaint in Alabama state court against unknown fictitious defendants, asserting a cause of action for intentional interference with contractual and business relations. The complaint alleged that the unknown fictitious defendants intentionally interfered with Atkinson's advertising relationships with newspaper, radio, and cable television outlets in the Clanton area. Atkinson later amended the complaint to substitute James Stokes, Kirk Stokes and SCI as the named party defendants, and the newly named defendants were served with notice of the complaint.

Upon receiving notice of the Atkinson complaint, SCI forwarded a copy of the complaint to Universal. At the time, SCI held a multiple coverage insurance policy issued by Universal which included liability insurance protection. In an accompanying letter, SCI inquired whether Universal would defend or pay for SCI's defense of the Atkinson claim under the policy's liability insurance provisions.

Universal received SCI's letter on June 7, 1988. A Universal regional claims manager reviewed the complaint, consulted *Black's Law Dictionary*, and concluded that the lawsuit arose from "intentional" acts not covered by the policy's liability insurance provisions.[3] On June 9, 1988, Universal wrote SCI informing it of Universal's determination that the policy would not cover the defense of Atkinson's suit or any resulting judgment because "the basis of the allegation [is] that the interference was an intentional act on the part of the policyholder, to interfere with the advertising of the plaintiff within the Clanton area." The letter invited SCI to respond or submit further information if it disagreed with Universal's determination.

SCI treated the letter from Universal as a denial of coverage, and proceeded to obtain its own counsel to handle the defense of the Atkinson action. Atkinson later amended the complaint to include a claim of wanton and malicious conduct, and SCI eventually agreed to settle the claims for $375,000. At the time of settlement, SCI had incurred legal fees of $40,503.37 in defending the action.

On March 25, 1991, SCI informed Universal of the settlement and asserted that Universal was liable under the insurance policy for SCI's legal expenses in defending the action and the amount of settlement.

---

**2.** Kirk Stokes testified that Kelley asked him to write the letter and dictated the contents of the letter to him. According to Stokes, the terms "unfair" and "undercutting" were specifically dictated by Kelley, and Stokes denied any personal belief in the truth of these statements.

**3.** The policy limited SCI's liability coverage based on SCI's intent in two respects. First, the policy limited coverage to "occurrences" which were defined as "accident[s], including continu-

ous or repeated exposure to conditions, which result[ ] in INJURY during the Coverage Part period *neither intended nor expected* by the INSURED." In addition, the policy specifically excluded from coverage "INJURY, PRODUCT RELATED DAMAGES or LEGAL DAMAGES, if caused by any dishonest, fraudulent, *intentional* or criminal act committed by any INSURED...." (Emphasis added.)

Accordingly, SCI demanded that Universal promptly reimburse it for these expenses or face legal action to collect on the claim. Anticipating a lawsuit, Universal brought this action for declaratory judgment.

### B. *Procedural History*

On May 9, 1991, Universal filed a diversity action against James Stokes, Kirk Stokes, and SCI in federal district court. *See* 28 U.S.C.A. § 1332 (West Supp. 1992). In its complaint, Universal sought a declaratory judgment that the insurance policy it issued to SCI did not provide coverage for or require Universal to defend Atkinson's intentional interference claim. *See* 28 U.S.C.A. § 2201 (West Supp. 1992). SCI counterclaimed, alleging that Universal's refusal to defend the suit and cover the settlement amount breached the terms of the insurance policy.

Before trial, both parties filed cross motions for summary judgment. On November 15, 1991, the district court denied both parties' motions with respect to the coverage issue, but granted SCI summary judgment on its claim that Universal breached its duty to defend. In reaching this determination, the district court first found the policy's coverage provisions to be ambiguous under Alabama law.[4] However, resolving the ambiguity in favor of SCI as the insured, the court construed the policy as affording coverage for the intentional interference claim so long as SCI did not specifically intend to injure Atkinson when it took its interference action. The district court ruled that there was a genuine issue of material fact as to whether SCI did in fact intend to injure Atkinson when it acted to interfere with Atkinson's business and contractual relations.

Nonetheless, the district court found summary judgment appropriate on SCI's claim that Universal breached its duty to defend the Atkinson claim. Under the district court's interpretation of the insurance policy, Universal was required to defend the Atkinson claim unless SCI intended the injury alleged in the complaint.[5] Because Universal could not have determined SCI's intent to injure based solely on the allegations of Atkinson's complaint, the district court ruled that Universal breached its duty to defend by failing to investigate Atkinson's claim.

Following the disposition of the parties' motions for summary judgment, the district court assigned the case to a magistrate judge[6] for a jury trial on the limited issue of whether SCI intended to injure Atkinson. The jury returned a verdict finding that SCI did not intend to injure Atkinson by its interference action. Applying its interpretation of the policy provisions to the jury's findings, the district court concluded that Universal breached the policy when it refused to provide coverage on Atkinson's claim.

## II. ANALYSIS

On appeal, Universal argues that the district court erred in interpreting SCI's insurance policy as providing liability coverage unless SCI acted with an intent to cause injury. According to Universal, the policy unambiguously excluded intentional torts from coverage, including Atkinson's intentional interference claim.[7] Because Universal's duty to defend was dependent on the existence of coverage, Universal asserts that it should have prevailed on both the

4. The parties agree that Alabama law properly governs this action. *See Cincinnati Ins. Co., Inc. v. Girod,* 570 So.2d 595, 597 (Ala.1990); *cf. Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 494, 61 S.Ct. 1020, 1020, 85 L.Ed. 1477 (1941) (federal courts apply choice of law rules of the forum state).

5. The policy provided:
WE [Universal] have the right and duty to defend any suit asking for damages [covered under the policy].... WE have no right or duty to defend suits for damages not covered by this Coverage Part.

6. The parties previously had agreed to try the case before a magistrate judge. *See* 28 U.S.C.A. § 636(c) (West Supp.1992); Fed.R.Civ.P. 73.

7. Intentional interference with contractual or business relations is an intentional tort under Alabama law. *See Gross v. Lowder Realty Better Homes & Gardens,* 494 So.2d 590, 597 n. 4 (Ala.1986).

duty to defend and coverage issues as a matter of law.

■ Because the district court interpreted SCI's insurance policy as a matter of law, the district court's construction of the policy is subject to *de novo* review. *See Hancock v. New York Life Ins. Co.,* 899 F.2d 1131, 1135 & n. 8 (11th Cir.1990); *Upton v. Mississippi Valley Title Ins. Co.,* 469 So.2d 548, 555 (Ala.1985); *Aetna Life Ins. Co. v. Hare,* 47 Ala.App. 478, 256 So.2d 904, 911 (1972). On review, we first examine whether the district court correctly interpreted the policy's liability insurance provisions as providing coverage for the intentional interference claim unless SCI intended injury. We then assess whether SCI was entitled to summary judgment on its claim that Universal breached its duty to defend by failing to investigate the Atkinson claim.

## A. The Coverage Issue

Universal contends that two clauses of SCI's insurance policy precluded coverage of Atkinson's intentional interference claim. First, Universal argues that the Atkinson claim did not constitute an insured "occurrence" under the terms of the policy because the claim involved an intentional tort that was either "intended or expected" by SCI. Second, Universal asserts that the policy would not afford coverage of the Atkinson claim in any event because the policy specifically excluded intentional acts from coverage.

### 1. The Atkinson Claim as an Insured "Occurrence"

■ SCI's insurance policy provided liability coverage for any injury "caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD." The policy defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in INJURY during the Coverage Part neither intended nor expected by the INSURED." Under Alabama law, SCI bore the burden of establishing coverage by demonstrating that Atkinson's intentional interference claim fell within the policy's

definition of "occurrence." *See Jordan v. National Accident Ins. Underwriters, Inc.,* 922 F.2d 732, 735 (11th Cir.1991); *Colonial Life and Accident Ins. Co. v. Collins,* 194 So.2d 532, 535 (Ala.1967).

The district court concluded that SCI met its burden of establishing coverage. The district court initially found that the policy's limitation of coverage to injuries "neither intended nor expected" by the insured was ambiguous with respect to whether the insured's intent should be measured subjectively or objectively. However, the district court noted that Alabama courts have interpreted virtually identical policy provisions which limit coverage to injuries not "intended or expected from the standpoint of the insured" as affording coverage except where the insured subjectively intended to cause the injury for which it is found liable. *See U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164, 1167 (Ala. 1985); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,* 454 So.2d 921, 925 (Ala. 1984). The district court found this interpretation of the policy's coverage provisions to be consistent with its duty to resolve policy ambiguities in favor of the insured. *See Jordan,* 922 F.2d at 734; *Champion Ins. Co. v. Wilkins,* 544 So.2d 965, 967 (Ala.1989). Therefore, the district court construed SCI's policy as covering Atkinson's claim unless SCI subjectively intended to harm Atkinson by its interference actions.

The court then turned to the allegations of Atkinson's complaint to determine whether Atkinson's claim conclusively precluded coverage. The complaint did not allege that SCI specifically intended to cause Atkinson injury, and the district court concluded that under Alabama law, a jury could find SCI liable for intentional interference without finding that SCI intended injury. *See Century 21 Academy Realty, Inc. v. Breland,* 571 So.2d 296, 297–98 (Ala.1990); *cf. Creel v. Davis,* 544 So.2d 145, 153 (Ala.1989) (refusing to require plaintiffs to show malice in order to establish claim for intentional interference

with contractual or business relations).[8] Because SCI submitted evidence, by way of sworn affidavits from James and Kirk Stokes, that SCI acted only to protect its own interests and not for the purpose of injuring Atkinson, the court ruled that a genuine issue of material fact existed as to whether SCI's interference constituted an "occurrence" under the policy's coverage provisions.

█ We conclude that the district court correctly applied a subjective standard in interpreting the policy's coverage limitation. Alabama courts have consistently construed insurance provisions which limit coverage to injuries not "intended or expected" by the insured as precluding coverage only where the insured subjectively intended or expected its action to cause injury. *See White v. Maryland Cas. Co.,* 589 So.2d 1294, 1296 (Ala.1991); *Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 465 So.2d 394, 396 (Ala.1985); *Dyer,* 454 So.2d at 925–26. As defined by the Alabama Supreme Court:

> [A]n injury is "intended from the standpoint of the insured" if the insured possessed the specific intent to cause bodily injury to another, whereas an injury is "expected from the standpoint of the insured" if the insured subjectively possessed a high degree of certainty that bodily injury to another would result from his or her act.

*Dyer,* 454 So.2d at 925. The district court's interpretation of SCI's insurance coverage is consistent with the Alabama Supreme Court's construction.[9]

Universal argues, however, that Alabama has adopted an exception to this general construction when the insured is charged with an intentional tort. According to Universal, Alabama has established that intentional torts will always be barred from coverage under policy provisions limiting coverage to injuries not "intended or expected" by the insured. *See Tapscott v. Allstate Ins. Co.,* 526 So.2d 570, 573–75 (Ala.1988); *Ladner & Co., Inc. v. Southern Guaranty Ins. Co.,* 347 So.2d 100, 103–04 (Ala.1977).

Our review of Alabama law indicates that although Alabama courts have indicated some willingness to presume that an intentional tortfeasor intends or expects injury by its actions,[10] the Alabama decisions rendered thus far have not abandoned the traditional analysis of determining the insured's subjective intent to injure. Thus, in *Ladner* and *Tapscott,* the pleadings themselves alleged that the insured parties subjectively intended or expected injury to result from their tortious actions. *See Tapscott,* 526 So.2d at 572 (complaint alleging intentional infliction of emotional distress and malicious and false imprisonment, detainment, and arrest indicated that the defendant intentionally caused the defendant's injuries, and the plaintiff testified under oath that the insured intentionally acted to harm him); *Ladner,* 347 So.2d at 101–03 (the insured necessarily "expected" the flood damages suffered by the plaintiffs under the plaintiffs' allegation that the insured fraudulently sold them property which it *knew* would flood).

---

**8.** To succeed on the intentional interference claim under Alabama law, Atkinson was required to allege and establish (1) the existence of a contractual or business relation; (2) SCI's knowledge of the contract or business relation; (3) intentional interference by SCI with the contract or business relation; and (4) damage to Atkinson as a result of the interference. *See Breland,* 571 So.2d at 297–98.

**9.** The district court instructed the jury that it could find an intent to injure if SCI intended to harm Atkinson, or if SCI knew that harm to Atkinson was substantially likely to result from its actions.

**10.** Several Alabama Supreme Court decisions have avoided the issue by concluding that the cause of action at issue could be sustained on a

lesser showing of recklessness or negligence. *See Universal Underwriters Ins. Co. v. Youngblood,* 549 So.2d 76, 78–79 (Ala.1989) (fraud action); *American States Ins. Co. v. Cooper,* 518 So.2d 708, 710 (Ala.1987) (fraud action); *Fowler Pest Control and Insulation, Inc. v. Hartford Ins. Co.,* 512 So.2d 88, 90 (Ala.1987) (fraud action); *cf. Universal Underwriters Ins. Co. v. East Central Ala. Ford–Mercury, Inc.,* 574 So.2d 716, 718 (Ala.1990) (recognizing insurer's argument that intentional torts would be barred under policy's "expected or intended" injury limitation, but finding it unnecessary to reach the issue). The only area in which Alabama has affirmatively adopted an irrebuttable presumption of intent to cause injury is in the realm of the sexual abuse and molestation of children. *See State Farm Fire and Casualty Co. v. Davis,* 612 So.2d 458, 464 (Ala.1993).

Moreover, the court in *Tapscott* did not hold, as it might have, that insurers are automatically relieved of coverage under "intended or expected" injury limitations whenever a complaint alleges only intentional torts. Rather, the court held that when an intentional tort is alleged, courts must proceed to "look[ ] to the allegations in the complaint, as well as available admissible evidence to determine the insurer's responsibility to defend and indemnify pursuant to the contract." *Tapscott*, 526 So.2d at 574. In light of Alabama's position that the general tort doctrine of "presumed intent".[11] has "no application" to intentional injury exclusions, we conclude that the Alabama courts would construe the policy's occurrence clause as affording coverage unless SCI subjectively intended to injure Atkinson through its interference actions. *See White*, 589 So.2d at 1295; *Armstrong*, 479 So.2d at 1167.

### 2. The Intentional Acts Exclusion

■ Universal argues that even if Atkinson's intentional interference claim fell within the policy's general coverage provisions, coverage of the claim was nonetheless defeated by the policy's specific exclusion of injuries caused by the insured's "intentional" acts. Under Alabama law, the insurer bears the burden of proving the applicability of any policy exclusion. *See Jordan*, 922 F.2d at 735; *Fleming v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 310 So.2d 200, 202 (Ala.1975).

■ The policy exclusion upon which Universal relies provides:

EXCLUSIONS—This insurance does not apply to:

(a) INJURY, PRODUCT RELATED DAMAGES or LEGAL DAMAGES, if caused by any dishonest, fraudulent, intentional or criminal act committed by any INSURED....

The district court determined that this exclusion should be given the same interpretation as the coverage limitation, and construed both provisions as excluding only those "injuries and damages specifically intended by the insured." The court found that this interpretation would give a uniform meaning to the term "intended" as used in the policy's coverage provision and the term "intentional" as used in the exclusion provision. The district court also noted that its interpretation of the provision would afford the insured maximum coverage.

On close examination of the terms of the policy exclusion, we conclude that the district court erred in construing the provision as excluding liability coverage only where the insured intended the damages or injuries giving rise to liability. Contrary to the district court's interpretation, the policy exclusion unambiguously excludes from coverage all intentional acts giving rise to liability regardless of whether the insured subjectively intended the resulting damages or injuries. This construction necessarily follows from a consideration of the exclusion in its entirety—the provision clearly excludes claims flowing from dishonest, fraudulent, intentional and criminal *acts*, not dishonest, fraudulent, intentional or criminal *injuries*.[12] Cf. *St. Paul Fire and Marine Ins. Co. v. Molton, Allen & Williams Corp., Inc.*, 592 So.2d 199, 202 (Ala.1991) (interpreting liability insurance policy's exclusion of any "dishonest, fraudulent, criminal or malicious act" as excluding all damages resulting from such acts). Therefore, we conclude that the policy exclusion defeats coverage for all liability resulting from SCI's intentional, as distinguished from negligent or reckless, acts. Cf. *Hooper v. Allstate Ins. Co.*, 571 So.2d 1001, 1002–03 (Ala.1990) (distinguishing be-

---

11. Under Alabama's general tort doctrine of "presumed intent," a tortfeasor is presumed to intend all injuries which are the "natural and probable consequences of [its] intentional acts." *See Armstrong*, 479 So.2d at 1167; *Dyer*, 454 So.2d at 925.

12. Thus, the cases interpreting exclusions of "intended or expected" injuries and injuries "intentionally caused by" the insured do not control

the interpretation of the policy exclusion before us despite the fact that courts applying Alabama law sometimes characterize such intentional injury exclusions as "intentional act exclusions." *See, e.g., Allstate Ins. Co. v. Steinemer*, 723 F.2d 873, 875–77 (11th Cir.1984) (interpreting intentional injury exclusion); *Davis*, 612 So.2d at 461–63 (interpreting exclusion of intended or expected injuries).

tween insurance policy's separate exclusions of (1) damages which could reasonably be expected to result from the insured's *intentional acts,* (2) damages which could reasonably be expected to result from the insured's criminal acts, and (3) *damages intended* by the insured).[13]

Applying this interpretation of the policy exclusion to Atkinson's complaint, we conclude that Atkinson's intentional interference claim fell within the policy's intentional acts exclusion. The complaint alleges that SCI intentionally interfered with Atkinson's business and contractual relations, and Atkinson could not have succeeded on the claim on any lesser showing of intent. *See Underwood v. South Central Bell Telephone Co.,* 590 So.2d 170, 177 (Ala.1991) (plaintiff must prove that the defendant's interference was intentional to recover for interference with business and contractual relations). Therefore, we hold that any liability arising from SCI's intentional interference with Atkinson's contractual and business relations was expressly excluded from coverage under the terms of SCI's insurance policy. This result is consistent with Alabama's requirement that the insured's duty to indemnify be determined by examining the language employed in the insurance policy and the allegations of the complaint. *See Tapscott,* 526 So.2d at 574.[14]

### B. *The Duty to Defend*

Universal also challenges the district court's decision to grant summary judgment in favor of SCI on its claim that Universal breached its duty to defend the Atkinson claim. The district court's grant of summary judgment is subject to *de novo* review. *See Real Estate Financing v. Resolution Trust Corp.,* 950 F.2d 1540, 1543 (11th Cir.1992); *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352, 1356 (11th Cir.1986).

Under the terms of the insurance policy, Universal's duty to defend depended on whether there was in fact coverage under the policy. However, because the decision on whether to provide a defense must be made at a preliminary stage in the proceedings, Alabama holds that an insurer's duty to defend may be broader than its duty to indemnify. *See Armstrong,* 479 So.2d at 1168; *Lawler Machine & Foundry Co. v. Pacific Indem. Ins. Co.,* 383 So.2d 156, 157 (Ala.1980). The insurer's duty to defend at this preliminary stage "must be determined primarily from the allegations of the complaint." *See Armstrong,* 479 So.2d at 1167; *Ladner,* 347 So.2d at 102. "If the allegations accuse the insured of actions for which the insurance company provides protection, the insurance company is obligated to defend the insured." *American States Ins. Co. v. Cooper,* 518 So.2d 708, 709 (Ala.1987).

In order to invoke an exclusion in denying a defense, the insurer bears the burden of pointing to allegations of the complaint or other available evidence by which the claim was clearly excludable. *See Armstrong,* 479 So.2d at 1168. If the insurer fails to establish such evidence, the insurer bears a duty to defend even if

---

13. SCI argues that the exclusion should be found to be ambiguous because the policy purports to afford coverage for certain named intentional torts not at issue in this appeal. We agree with the district court that although the policy may be ambiguous with respect to the intentional torts specified for coverage, this does not make the exclusion ambiguous with regard to intentional torts not specified in the insurance policy.

14. Universal also argues that this Circuit's interpretation of Alabama public policy prohibits insurance coverage of intentional interference with contractual and business relations because the tort constitutes an "intentional wrong." *See American & Foreign Ins. Co., Inc. v. Colonial*

*Mortgage Co., Inc.,* 936 F.2d 1162, 1165 (11th Cir.1991); *St. Paul Ins. Cos. v. Talladega Nursing Home, Inc.,* 606 F.2d 631, 634 (5th Cir.1979); *but see Burnham Shoes, Inc. v. West American Ins. Co.,* 504 So.2d 238, 241 n. 1 (Ala.1987) (expressly declining to comment on whether insurance policies purporting to indemnify intentional acts violate public policy). However, Universal failed to raise its public policy argument before the district court, and consideration of an argument raised for the first time on appeal is at our discretion. *See Federal Deposit Ins. Corp. v. 232, Inc.,* 920 F.2d 815, 817 (11th Cir.1991). In light of our conclusion that the intentional interference claim fell within the terms of the policy exclusion, we express no opinion on Universal's public policy argument.

subsequent developments indicate circumstances that would render the claim excludable. *See id.* at 1168–69.

 Universal argues that the Atkinson complaint specifically alleged an act excluded from coverage, and that Universal was therefore justified in refusing to defend the claim based solely on the allegations of the complaint. SCI responds that Universal breached its duty to defend by failing to investigate the facts underlying the complaint before denying coverage. SCI emphasizes that this Court has interpreted Alabama law as requiring insurers to conduct an investigation beyond the terms of the complaint before denying coverage where the "insurer is uncertain what the complaint is alleging." *See Perkins v. Hartford Ins. Group*, 932 F.2d 1392, 1395 (11th Cir.1991). SCI argues that this standard has been met because the Universal claims agent who determined that SCI was not covered admitted that he did not understand the complaint when he received it.

Our review of the record on summary judgment, however, does not support SCI's assertion. Although the Universal claims agent who reviewed SCI's claim admitted that the tort of intentional interference was vague to him because he had not previously dealt with such a claim, the agent testified that after consulting *Black's Law Dictionary* and an attorney, he was confident that the allegation of intentional interference brought the claim within the policy's intentional acts exclusion.

We do not find the terms of the complaint to be so vague as to require an independent investigation by Universal before denying coverage. Because the complaint's allegation of intentional interference fell within the policy exclusion, we conclude that Universal did not breach the policy by refusing to provide SCI with a defense of the claim. Therefore, the district court erred in granting SCI summary judgment, and we further conclude that Universal is properly entitled to judgment on the duty to defend issue.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the district court's judgment and REMAND with instructions to enter judgment in favor of Universal.

BIRCH, Circuit Judge, Specially concurring:

While I concur in the result in this case, I am persuaded that the determinative Alabama law is subject to more than one reasonable interpretation. Seasoned Alabama judges, albeit on the federal bench, differ in their interpretation of that law. Accordingly, in an insurance law case such as this, where the pivotal issues are likely to frequently reoccur, I would certify the issues to the Alabama Supreme Court.