**ALLSTATE INDEMNITY COMPANY,**
Plaintiff,

v.

**Frances LEWIS, etc., et al., Defendants.**

No. CIV. A. 96–T–1028–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 18, 1997.

Michael Baird Beers, Christopher Joseph Hughes, Beers, Anderson, Jackson, Hughes & Patty, PC, Montgomery, AL, for Allstate Indem. Co.

Donald R. Harrison, Harrison & Edmondson, LLC, Dadeville, AL, for Francis Lewis.

Tyrone Carlton Means, Launice P. Sills, Paul C. Williams, Thomas, Means & Gillis, P.C., Montgomery, AL, for Michael Doak Nesbitt.

## MEMORANDUM OPINION

MYRON H. THOMPSON, Chief Judge.

Pursuant to the Declaratory Judgment Act, 28 U.S.C.A. § 2201, plaintiff Allstate Indemnity Company filed this lawsuit against defendant administratrix of the estate of Walter Lewis, Jr., and defendant Michael Doak Nesbitt, seeking a declaration that Allstate has no duty, under a homeowner's insurance policy, to defend or indemnify Nesbitt in an underlying state-court action the administratrix has against Nesbitt.

Allstate has invoked this court's diversity-of-citizenship jurisdiction under 28 U.S.C.A. § 1332. By agreement of the parties, this lawsuit has been submitted to the court for final judgment on the pleadings, the jointly-submitted evidentiary record, and the briefs of the parties. For the reasons that follow, the court declares that Allstate has a duty to defend Nesbitt against claims of negligence and assault in the underlying lawsuit, and has no duty to defend claims of wantonness and conspiracy to kill.

## I. BACKGROUND

On January 9, 1994, Nesbitt and Lewis drove to the Top Flight Disco, a nightclub in Montgomery, Alabama.[1] As Nesbitt idled the car in the street, Lewis exited the car and began talking to William[2] Hayes in front of the club.[3] Nesbitt remained in the car and observed Hayes and Lewis as they engaged in a verbal altercation.[4] This verbal confrontation escalated, and Hayes began pointing a gun toward Lewis.[5]

At this point, Nesbitt retrieved a handgun from a compartment in the car and approached Hayes and Lewis.[6] Lewis was positioned between Hayes and Nesbitt.[7]

---

1. Allstate's memorandum of law, filed on December 23, 1996, at 2 (citing Nesbitt's deposition at 6).

2. Allstate and the administratrix refer to Hayes as "Walter Hayes" and "William Hayes." Allstate's memorandum of law, filed on December 23, 1996, at 2; Administratrix's memorandum of law, filed on December 31, 1996. Nesbitt refers to "Williams Hayes." Nesbitt's memorandum of law, filed on January 3, 1997, at 1.

3. Allstate's memorandum of law, filed on December 23, 1996, at 2 (citing Nesbitt's deposition at 9).

4. *Id.* (citing Nesbitt's deposition at 11 and 13); Administratrix's memorandum of law, filed on December 31, 1996, at 2 (citing Nesbitt's deposition at 11 and 13); Nesbitt's memorandum of law, filed on January 3, 1997 (citing Nesbitt's trial transcript at 28–29).

5. Allstate's memorandum of law, filed on December 23, 1996, at 2.

6. *Id.*

7. *Id.*

The parties dispute the following events. Allstate claims that Nesbitt drew his weapon and pointed it toward Hayes;[8] that Hayes fired at Nesbitt, and Nesbitt returned the fire;[9] and that Lewis, being trapped between the gunmen, was shot and subsequently died of his injuries.[10] Nesbitt also shot and killed Hayes during the gun fight.[11]

Lewis's administratrix and Nesbitt claim that Lewis asked Nesbitt for the weapon and then attempted to grab the gun;[12] and that, during Lewis's struggle with Nesbitt for the weapon, the gun accidentally discharged, and a bullet struck Lewis.[13]

Nesbitt was arrested and charged with the deaths of Lewis and Hayes.[14] During the trial, Nesbitt testified that he did not fire at Hayes until after Lewis was injured by the accidental discharge.[15] Nesbitt was found not guilty in the criminal trial.[16]

After Nesbitt's criminal trial, Lewis's mother, as his administratrix, brought a lawsuit against Nesbitt in the Circuit Court of Montgomery County, raising claims related to the shooting and subsequent death of her son. Allstate filed this federal lawsuit seeking a declaratory judgment of its duty to defend and indemnify Nesbitt under his parents' homeowner insurance policy.

At the time of the shooting, Nesbitt resided with his parents who were insured by Allstate.[17] Nesbitt was covered under his parents' policy.[18] The policy provides that, "Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an occurrence" that is covered under the policy.[19] The policy, however, contains a number of exclusions, including an exclusion for bodily injury or property damage that results from an insured's intentional or criminal acts or omissions.[20]

## II. DUTY TO DEFEND

Allstate argues that it has no duty to defend Nesbitt in the underlying state-court lawsuit because the allegations in the state-court complaint fall outside the scope of the insurance policy's coverage. The court disagrees in part and agrees in part.

### A.

■ An insurance company's duty to defend its insured from suit is determined by the language of the insurance policy and by the allegations in the complaint filed against the insured. *Alfa Mutual Ins. Co. v. Morrison*, 613 So.2d 381, 382 (Ala.1993); *Ladner & Co. v. Southern Guar. Ins. Co.*, 347 So.2d 100, 102 (Ala.1977). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Mun. Ins. Co.*, 585 So.2d 1365, 1367 (Ala.1991) (in-

---

**8.** Allstate's memorandum of law, filed on December 23, 1997, at 3 (citing Nesbitt's deposition at 19–21, 24–25, 31, 39).

**9.** *Id.* at 3–5.

**10.** *Id.* at 3.

**11.** Nesbitt's memorandum of law, filed on January 3, 1997, at 3.

**12.** *Id.* at 2 (citing Nesbitt's trial transcript at 47).

**13.** *Id.*

**14.** *Id.* at 3.

**15.** *Id.* at 2 (citing Nesbitt's trial transcript at 47).

**16.** There is no evidence in the record reflecting that Nesbitt was found not guilty. However, in

his brief filed on January 3, 1997, at 3, Nesbitt asserts that he was found not guilty, and Allstate does not take issue with this assertion in its later brief.

**17.** Administratrix's memorandum of law, filed on December 31, 1996, at 1 (citing Nesbitt's deposition at 2).

**18.** *Id.*

**19.** Report regarding the submission of evidence, filed on November 9, 1996, at 7 (attached exhibit: insurance policy at 2829).

**20.** *Id.* ("We do not cover any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person.").

ternal quotations omitted) Where the allegations of the complaint show that no injury alleged is within the coverage of the policy, however, "the court is not limited to the bare allegations of the complaint ... but may also look to facts which may be proved by admissible evidence." *Id. See also Perkins v. Hartford Ins. Group,* 932 F.2d 1392 (11th Cir.1991).

█ Under Alabama law, the insured bears the burden of establishing coverage by demonstrating that a claim falls within the policy, *Colonial Life & Accident Ins. Co. v. Collins,* 280 Ala. 373, 194 So.2d 532, 535 (Ala.1967), while the insurer bears the burden of proving the applicability of any policy exclusion. *U.S. Fidelity & Guar. Co. v. Armstrong,* 479 So.2d 1164, 1168 (Ala.1985). If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured. *Altiere* v. *Blue Cross & Blue Shield,* 551 So.2d 290, 292 (Ala.1989). However, if there is no ambiguity, an insurance contract must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties. *Id.*

Lewis's administratrix raises the following allegations in the underlying state-court lawsuit:

- In count one, the administratrix claims that Nesbitt and others assaulted her son.[21]

- In count two, she claims that Nesbitt and others negligently and wantonly caused the death of her son.[22]

- In count three, she alleges that Nesbitt and others conspired to kill her son.[23]

- Finally, in counts four and five, she claims that Nesbitt wantonly caused the death of her son.[24]

In sum, Lewis's administratrix seeks to recover under the following state-law theories: (1) negligence, (2) assault, (3) wantonness, and (4) conspiracy to kill.

As stated, the policy provides that Allstate would defend Nesbitt for amounts that he was legally obligated to pay for "bodily injury" or "property damage" due to an "occurrence."[25] The policy offers the standard definition of an "occurrence" within the context of insurance law: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage."[26] The policy, however, excludes "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person."[27] Relying on the exclusion, Allstate maintains that, because the administratrix's underlying state-court complaint alleges injury from 'intentional' acts, it has no duty to defend Nesbitt on these claims.[28] The question for the court, therefore, is whether any of the theories of recovery is based on intentional conduct and thus falls within the exclusion.

## B.

█ In *Universal Underwriters Ins., Co. v. Stokes Chevrolet, Inc.,* 990 F.2d 598 (11th

---

**21.** Allstate's memorandum in support of response to motions to decline jurisdiction, filed July 31, 1996 (exhibit A: state court complaint).

**22.** *Id.*

**23.** *Id.*

**24.** Report regarding the submission of evidence, filed on November 9, 1996, at 7 (attached exhibit: amended state court complaint).

**25.** Allstate's memorandum of law, filed on December 23, 1996 (exhibit. A: insurance policy at 28 (family liability protection)).

**26.** *Id.* (exhibit A: insurance policy at 4 (family liability protection)).

**27.** *Id.* (exhibit A: insurance policy at 28 (family liability protection)).

**28.** The court does not understand Allstate to contend that the 'criminal' acts exclusion applies. If the court is incorrect, Allstate should immediately so inform the court. In any event, Nesbitt was found not guilty of any criminal act.

Cir.1993), the Eleventh Circuit Court of Appeals addressed the issue of coverage when a policy precludes coverage based on language which uses "intentional" terminology. The court made clear that the coverage issue turns on the specific policy terminology or wording at issue. There, two parts of the policy, with critically different wording, were at issue. The first part addressed the broad question of liability coverage and provided for coverage "caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD." 990 F.2d at 602. The policy then defined an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in INJURY during the Coverage Part *neither intended nor expected by the INSURED.*" *Id.* (emphasis added). The court held that, because this wording limited coverage to injuries 'neither intended nor expected by the insured,' coverage was afforded "except where the insured *subjectively* intended to cause the injury for which it is found liable." *Id.* (emphasis added). The court explained that, with such wording, "a subjective standard" should be applied "in interpreting the policy's coverage limitation." *Id.* at 603.

The second part of the policy, which provided for exclusions, also used "intentional" terminology. It excluded from coverage "INJURY, PRODUCT RELATED DAMAGES or LEGAL DAMAGES, if caused by any dishonest, fraudulent, *intentional* or criminal act committed by any INSURED." *Id.* at 604 (emphasis added). However, because the critical language, 'neither intended nor expected by the insured,' was missing, the court concluded that "the policy exclusion unambiguously excludes from coverage *all intentional acts* giving rise to liability regardless of whether the insured subjectively intended the resulting damages or injuries." *Id.* (emphasis added). The subjectivity of the insured was immaterial. *Id.*

Admittedly, the phrase "all intentional acts"—without the 'intended by insured' or any other modifier—could be viewed as encompassing even negligent or reckless acts, for even these latter acts usually involve some volitional, and in that sense intentional, conduct. *See Preferred Mut. Ins. Co. v. Ga-*

*mache,* 42 Mass.App.Ct. 194, 675 N.E.2d 438, 442 (Mass.App.Ct.1997) ("any volitional act of the insured could be an intentional act excluded from coverage," resulting in an almost total, if not total, vitiation of the policy's coverage of accidents), *aff'd,* 426 Mass. 93, 686 N.E.2d 989 (Mass. 1997); *Snyder v. Nelson,* 564 P.2d 681, 683 (Or.1977) ("Most, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal policy provisions if there was no intention to cause, by the commission of the acts, the resulting injuries or damages."); *contrast* Restatement (Second) of Torts § 8A cmt. a (1965) (" 'Intent,' as it is used throughout the Restatement of Torts, has reference to the consequences of an act rather than the act, itself. When an actor fires a gun in the midst of the Mojave Desert, he intends to pull the trigger; but when the bullet hits a person who is present in the desert without the actor's knowledge, he does not intend that result.").

It is apparent, however, that the court in *Universal Underwriters* did not intend that the phrase reach that far, for it wrote, "Therefore, we conclude that the policy exclusion defeats coverage for all liability resulting from ... intentional, as distinguished from negligent or reckless, acts." 990 F.2d at 604. Therefore, under *Universal Underwriters,* if the words 'neither intended nor expected by the insured' are present, then a subjective intent standard applies; but if the words are absent, then, depending on other wording, coverage could be viewed as excluding all intentional acts, but still extending to negligent and reckless acts.

It would appear that, by concluding that an exclusion for "all intentional acts" does not reach negligence, the appellate court reintroduces the concept of injury 'neither intended nor expected by the insured,' that is, injury not 'subjectively' intended by the insured. After all, "[t]he definition of *negligence* ... includes only such conduct as creates liability for the reason that it involves a risk and not a certainty of invading the interest of another. It therefore excludes conduct which creates liability because of the actor's *intention* to invade a legally protected interest of the

person injured or of a third person." Restatement (Second) of Torts § 282 cmt. d (1965) (emphasis added). However, an intent to injure can also be objective, that is, inferred objectively from the circumstances or as a matter of law. *See State Farm Fire and Cas. Co. v. Davis,* 612 So.2d 458 (Ala. 1993). Under *Universal Underwriters,* therefore, the exclusion for 'all intentional acts' would extend to acts intended both subjectively and objectively.

Here, the provision at issue provides for the exclusion of "any bodily injury or property damage intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any insured person." It would appear at first blush that this exclusion is comparable to the exclusion in *Universal Underwriters* (injuries 'neither intended nor expected by the insured'). The two exclusions are not comparable, however. The proper parsing of the exclusion in *Universal Underwriters* reflects that the terms 'expected' and 'intended' are both qualified by the term 'by the insured.' In other word, the injury is not excluded if it is only expected or intended; but rather, to be excluded, the injury must be expected or intended *by the insured.* The proper parsing of the exclusion applicable to Nesbitt renders a different result:

(1) which may reasonably be *expected* to result from the *intentional* acts or omissions of an insured person, or

(2) which may reasonably be *expected* to result from the *criminal* acts of an insured person, or

(3) which is in fact *intended by an insured person.*

Thus, while the injury must be intended by the insured, it may not be expected by the insured; the injury can be expected in general, that is, objectively.

This parsing of the exclusion applicable to Nesbitt is supported by case law. In *Hooper v. Allstate Ins. Co.,* 571 So.2d 1001 (Ala.1990), the Alabama Supreme Court was confronted with the following similar exclusion: "We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which are in fact in-

tended by an insured person." 571 So.2d at 1002. The court then parsed the language as follows: "(1) which may reasonably be expected to result from the intentional acts of an insured person, or (2) which may reasonably be expected to result from the criminal acts of an insured person, or (3) which is in fact intended by an insured person." *Id.* at 1003. At issue in *Hooper* was the 'criminal acts' terminology. The court found that, because the 'criminal acts' terminology was not qualified with the words 'intended by the insured,' it made no difference "whether the insured intended to commit the act or to cause the harm." *Id.* Similarly here, because the 'expected to result from the intentional acts' terminology is not qualified by the phrase 'by the insured,' it makes no difference whether the insured expected to commit the act or to cause the harm. The exclusion in the Allstate policy extends to *all intentional acts* giving rise to liability regardless as to whether the insured subjectively expected the resulting damages or injuries; the exclusion does not extend to negligent or reckless acts, however. With this understanding, the court now turns to the state-law theories under which in the administratrix seeks to recover from Nesbitt.

### C.

■ *NEGLIGENCE:* The administratrix and Nesbitt argue that Nesbitt did not intend or expect to shoot, and thus, did not intend or expect to injure, Lewis. They, therefore, maintain that Nesbitt is charged with negligent, not intentional, conduct.

■ Negligence, by definition, is not an intentional tort. As stated, "[t]he definition of negligence ... includes only such conduct as creates liability for the reason that it involves a risk and not a certainty of invading the interest of another. It therefore excludes conduct which creates liability because of the actor's intention to invade a legally protected interest of the person injured or of a third person." Restatement (Second) of Torts § 282 cmt. d (1965). *See also Universal Underwriters,* 990 F.2d at 604 ("Therefore, we conclude that the policy exclusion defeats coverage for all liability resulting

from ... intentional, as distinguished from negligent or reckless, acts.") Therefore, the administratrix's claim of negligence does not fall within the intentional acts exclusion to coverage.

Admittedly, it could be reasonably argued that Nesbitt's conduct does not fit within the concept of negligence. *See Robinson v. Alabama*, 441 So.2d 1045, 1047 (Ala.Cr.App. 1983) ("One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all.") Indeed, relying on the evidence, Allstate strenuously makes this argument to this court.

However, while the court is not always limited to the bare allegations of the complaint and may sometimes look to facts which may be proved by admissible evidence, the court may look beyond the complaint only if the allegations of the complaint show that *no* injury alleged is within the coverage of the policy. *Chandler v. Alabama Mun. Ins. Co.*, 585 So.2d 1365, 1367 (Ala.1991). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend *regardless of the ultimate liability of the insured*." *Id.* (internal quotations omitted) (emphasis added).

Allstate, therefore, makes its lack-of-factual-merit argument to the wrong court. This court's role, in determining insurance coverage, is solely to decide whether the claim brought against the insured includes covered conduct (in this case, a negligence count), and not whether the claim has factual merit. If, in fact, the claim lacks merit, the insurer, as a part of its responsibility to the insured, should bring that to the attention of the state court and have it dismissed. The insurer's responsibility for covered conduct is not limited to claims that have factual merit.

■ *ASSAULT:* Typically, "[a]n actor is subject to liability to another for assault if he acts intending to cause harmful or offensive contact." Restatement (Second) of Torts § 21 (1965). "An action which is not done

... intention[ally] ... does not make the actor liable." *Id.* *See also Wright v. Wright*, 654 So.2d 542, 544 (Ala.1995) (an "assault" is "an *intentional*, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an imminent battery.") (internal quotations omitted) (emphasis added). Alabama, however, has refused to abandon an earlier view that an assault may be either 'intentional' or 'negligent.' In *Birmingham v. Thompson*, 404 So.2d 589 (Ala.1981), the Alabama Supreme Court held, over the strong objection of the Chief Justice, that, under a statute providing that city could not be liable for damages unless suffered through the neglect, carelessness, or unskillfulness of its employee, plaintiff could pursue assault claim because State has historically recognized negligent, as well as intentional, assault. The court wrote: "The opinion of Professor Prosser expressed in his notable treatise, Handbook of the Law of Torts, § 8 (4th ed.1971), that the concept of a 'negligent assault and battery' is outmoded, has served neither to overrule the well-established Alabama doctrine nor that of other jurisdictions. The contemporary rule in Connecticut, for example, is that an actionable assault and battery may be committed under circumstances showing a reckless disregard of consequences, or committed negligently." 404 So.2d at 591 (citations omitted).

■ Because Lewis's administratrix is contending that Nesbitt acted negligently, Allstate must defend Nesbitt to this extent. Again, it may be that the administratrix's negligent assault theory is factually insupportable, but this argument should be presented to the state court as a reason to dismiss the complaint to the extent it is based on this theory.

■ *WANTONNESS:* Wantonness is " 'characterized as an act which cannot exist without a purpose or design, a conscious or intentional act.' " *Ex parte Anderson*, 682 So.2d 467, 470 (Ala.1996) (quoting *Lynn Strickland Sales & Serv., Inc. v. Aero–Lane Fabricators, Inc.*, 510 So.2d 142, 146 (Ala. 1987) (emphasis added)); *Dempsey v. Phelps*,

700 So.2d 1340, 1346 (Ala. 1997) (wantonness occurs (1) when a person "intends to injure another," or (2) when a person "acts, or fails to act, with a knowledge and consciousness that his action or failure to act will result in injury"). To hold a defendant liable for wanton conduct, a plaintiff must show that, "with reckless indifference to the consequences," the defendant either "consciously or intentionally" did some wrongful act or "consciously" omitted some known duty which produced the injury. Alabama Pattern Jury Instructions § 29.00 (2d ed.1993) (emphasis added). In short, wantonness " 'imports *premeditation,* or knowledge and consciousness that *injury is likely* to result from the act done.' " *Ex parte Anderson,* 682 So.2d at 470 (quoting *Lynn Strickland Sales & Serv., Inc. v. Aero–Lane Fabricators, Inc.,* 510 So.2d 142, 146 (Ala.1987) (emphasis added)).

■ Arguably, wantonness would exceed, and thus fall outside of, the definition of an intentional act if the phrase intentional act is limited to a 'subjective' intent to injure or 'subjective' expectation of injury. However, the term would fall within the definition of an intentional act if the definition is expanded to include an 'objective' component, that is, an injury that could be reasonably expected and inferred, without regard to the subjective expectation of the insured. To the extent wantonness connotes that the injury was specifically expected by the insured, the concept obviously falls within the subjective component of the definition of an intentional act; and to the extent wantonness connotes a consciousness that injury is likely to result, the concept encompasses the notion that injury was reasonably foreseeable and expected, and thus falls within the objective component of the definition of intentional act. Therefore, the court concludes that Allstate is not obligated to defend Nesbitt on the administratrix's complaint to the extent it is based on a theory of wantonness.

■ *CONSPIRACY TO KILL:* Because a civil conspiracy is an 'agreement' or 'understanding' between two or more person to accomplish some unlawful end, or some lawful end by unlawful means, a conspiracy perforce includes an element of intent to injure or do wrong; mere negligence is insufficient to establish a conspiracy. *See Snyder v. Faget,* 295 Ala. 197, 326 So.2d 113, 119 (Ala.1976) (in conspiracy action, plaintiff could not recover on proof that he was, through negligence, falsely committed to a mental institution, but rather plaintiff had to establish that the defendants' purpose was to cause damage to plaintiff). Allstate has no duty to defend Nesbitt on the administratrix's conspiracy-to-kill claim.

## III. DUTY TO INDEMNIFY

■ Although the existence of a duty to defend may be established by the allegations in the injured party's complaint, the insurer's liability to the insured is ultimately established by what is developed at trial. Therefore, a determination of the duty to indemnify cannot be made at a preliminary stage in the proceedings, when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy at issue. *Ladner,* 347 So.2d at 104; *see also Home Ins. Co. v. Rice,* 585 So.2d 859, 861 (Ala.1991); *Tapscott v. Allstate Ins. Co.,* 526 So.2d 570, 573–75 (Ala.1988). That is why the Seventh Circuit Court of Appeals stated that "the duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit." *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 693 (7th Cir. 1995).

"Because this lawsuit has been brought under the Declaratory Judgment Act and because it has been brought in federal court, an issue of ripeness that may be peculiar to federal courts is raised." *Guaranty Nat'l Ins. Co. v. Beeline Stores, Inc.,* 945 F.Supp. 1510, 1514 (M.D.Ala.1996). *First,* the Constitution restricts the exercise of judicial power to "cases" and "controversies." U.S. Const. art. III, § 2. The Declaratory Judgment Act, "in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision," *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937), and thus "is operative only in respect to controversies which are such in

the constitutional sense." *Id.*[29] "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. . . . It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

*Second,* the Declaratory Judgment Act states that a court *"may* declare the rights and other legal relations of any interested party seeking this declaration." 28 U.S.C.A. § 2201 (emphasis added). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995) (quoting *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952)). Therefore, " '[t]here is . . . nothing automatic or obligatory about the assumption of "jurisdiction" by a federal court to hear a declaratory judgment action. . . . Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.' " *Wilton,* 515 U.S. at 287, 115 S.Ct. at 2143 (quoting E. Borchard, Declaratory Judgments 313 (2d ed.1941)). Emphasizing the "unique breadth of this discretion," the

Supreme Court has stated that it is "more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* at 289, 115 S.Ct. at 2144[30]

 Here, Nesbitt could prevail in the underlying lawsuit. With this result, the issue of whether Allstate must indemnify Nesbitt would be moot, and the court would never have to reach the issue. "The time and effort the court and the parties would have expended in resolving the issue would be wasted. For these reasons, the court concludes that the issue of indemnification is not sufficiently ripe to present a 'case' or 'controversy' and that, if there were, the court would still, in the exercise of its discretion, decline to provide declaratory relief." [31] *Beeline Stores, Inc.,* 945 F.Supp. at 1515.

## IV. CONCLUSION

The court concludes that the liability policy issued by Allstate applies to the negligence and assault claims, but not the wantonness and conspiracy-to-kill claims, against Nesbitt presented in the underlying state lawsuit by the administratrix. Consequently, Allstate has an obligation to defend the negligence and assault claims in that lawsuit. However, the question whether Allstate might ultimately be responsible for indemnifying Nesbitt against any losses accruing in that lawsuit is not timely brought before this court. The court therefore grants Allstate's request for declaratory relief in part and denies it in part.

An appropriate judgment will be issued.

---

**29.** "The word 'actual' is one of emphasis rather than of definition." *Aetna Life Ins.,* 300 U.S. at 240–41, 57 S.Ct. at 463.

**30.** "A state court not constrained by these factors might be able to hear declaratory judgment matters that a federal court cannot." *Beeline Stores, Inc.,* 945 F.Supp. at 1515 n. 3.

**31.** Because the decision whether to provide a defense must be made at a preliminary stage in

the proceedings, an insurer's duty to defend can be broader than its duty to indemnify. *Burnham Shoes, Inc. v. West Am. Ins. Co.,* 504 So.2d 238, 241 (Ala.1987); *see also Universal Underwriters Ins. Co. v. Stokes Chevrolet, Inc.,* 990 F.2d 598, 605 (11th Cir.1993); *Armstrong,* 479 So.2d at 1168; *Lawler Machine & Foundry Co. v. Pacific Indem. Ins. Co.,* 383 So.2d 156, 157 (Ala.1980).