STATE FARM FIRE & CAS.
CO., Plaintiff,

v.

J. Hoyt MIDDLETON; Auto Parts Unlimited, Inc.; Grady Jackson Smith, Jr.; and Janet Michele Smith, Defendants.

No. Civ.A. 98–D–552–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 14, 1999.

Michael B. Beers, Winston S. Edwards, Montgomery, AL, for plaintiff.

Scarlette M. Tuley, Mark Englehart, Stephen W. Drinkard, Montgomery, AL, James E. Williams, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Plaintiff's Motion for Summary Judgment ("Mot."), along with its Memorandum Brief In Support Of Motion For Summary Judgment ("Pl.'s Br."), filed May 26, 1999. On June 15, 1999, Defendants Auto Parts Unlimited, Inc., Grady Jackson Smith, Jr., and Janet Michele Smith[1] jointly filed their Response In Opposition To Plaintiff's Motion For Summary Judgment, which the court construes as a Response ("Smiths' Resp."). On the same day, Defendant J. Hoyt Middleton ("Middleton") filed his Reply Brief In Opposition To Plaintiff's Motion For Summary Judgment, which the court construes as a Response ("Middleton's Resp."). On June 22, 1999, Plaintiff filed Replies to both Responses. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds the Plaintiff's Motion is due to be granted in part and denied in part.

## JURISDICTION AND VENUE

Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff filed this lawsuit against Defendants seeking a declaration that Plaintiff has no duty, under Homeowner's Policy Number 01–61–2329–7 ("homeowner's policy") or Personal Liability Umbrella Policy Number 01–C1–8400–1 ("umbrella policy"), to defend or indemnify Defendant Middleton in an underlying state-court action that the Smiths have filed against Middleton. The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332. The Parties do not contest personal jurisdiction or venue.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment,

---

1. Defendants Auto Parts Unlimited, Inc., Grady Jackson Smith, Jr., and Janet Michele Smith have jointly filed all pleadings before this court and are considered to be an individual Party for the purposes of this action. Therefore, the court will hereafter refer to these Defendants collectively as the "Smiths."

after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## FACTUAL BACKGROUND

In November, 1992, the Smiths purchased an auto parts store from Middleton. (Smiths' Resp. at 4.) The purchase agreement between the Smiths and Middleton included a long term lease of a building owned by Middleton, which housed the auto parts store. (*Id.*) After finalizing the purchase and lease agreement with Middleton, the Smiths began operating their new auto parts store known as Auto Parts Unlimited, Inc. (*Id.*)

In August, 1994, the Smiths began experiencing financial difficulties with their business and turned to Middleton for assistance. (*Id.*) Although Middleton refused to lower the Smiths' lease payments, he did try to help the Smiths by contacting their primary supplier of inventory, Southeastern Automotive Warehouse ("SAW"). (*Id.*) Middleton successfully persuaded SAW to infuse approximately $70,000 worth of inventory into the Smiths' business. (Middleton Dep. at 113.) The Smiths executed a promissory note to pur-

chase this new inventory and began making monthly payments to SAW. (Smiths' Resp. at 4.)

Despite their new inventory credit arrangement with SAW, the Smiths continued to experience financial problems. (*Id.* at 5.) Consequently, in December, 1995, the Smiths breached their lease with Middleton and moved to another building in an effort "to reduce the expenses associated with doing business." (*Id.*) In March, 1996, Middleton filed a breach of contract action against the Smiths in which he ultimately prevailed. (Pl.'s Br. at 10.)

After breaching their lease with Middleton and moving to a new location, the Smiths made yet another attempt to resolve their financial difficulties by again renegotiating their inventory credit arrangement with SAW. (Smith's Resp. at 5.) The new arrangement provided that the Smiths would pay off their existing debt to SAW and in return, SAW would extend a $100,000 line of inventory credit to the Smiths. (*Id.*) In reliance on this new arrangement, the Smiths borrowed $35,000 from Sterling Bank and withdrew $6,000 from their personal savings account to pay off their existing debt to SAW. (*Id.*) However, SAW never extended the $100,000 line of credit to the Smiths and, as a result, the Smiths had to look elsewhere for their inventory needs. (*Id.*) Unable to obtain inventory on credit from other sources, the Smiths subsequently went out of business. (*Id.*)

On March 14, 1997, the Smiths filed an action in state court against various defendants, including Middleton. (Pl.'s Br. at 10.) In their Complaint, the Smiths allege that Middleton, in retaliation for the Smiths' breach of contract, caused their business to fail by wrongfully influencing SAW to renege on its credit arrangement with the Smiths. (*Id.* at 6.) Further, the Smiths claim that Middleton "engaged in wanton, spiteful, and malicious communications with [other] creditors and customers of the Smiths," thereby, contributing to

the failure of the Smiths' business. (*Id.*) In sum, the Smiths allege the following counts against Middleton in their Complaint: (1) tortious interference with business relations; (2) wantonness; (3) conspiracy; and (4) negligence. (Smiths' Compl. at 8–10.)

During the relevant time periods, Middleton owned a homeowner's policy and an umbrella policy that were both issued by Plaintiff. (Middleton's Countercl. at ¶ 4.) On April 11, 1997, Plaintiff engaged counsel to represent Middleton, under a reservation of rights letter, in the Smiths' action against Middleton. (*Id.* at ¶ 6.) Said action is currently pending resolution in the Circuit Court of Montgomery County, Alabama.[2] (*Id.*)

On May 13, 1998, Plaintiff filed its Complaint For Declaratory Judgment asking this court to declare that Plaintiff has no duty to defend and/or indemnify Middleton in the underlying state court action. (Compl. at 7.) Thereafter, Plaintiff filed its Motion For Summary Judgment and accompanying Brief which set forth the following arguments: (1) Plaintiff asserts that the definition of "an occurrence," has not been met and, thus, coverage has not been triggered under the homeowner's policy; (2) Plaintiff contends that the "expected or intended" exclusion contained in the umbrella policy precludes coverage for the Smiths' claims against Middleton for tortious interference with business relations, wantonness, and conspiracy; and (3) Plaintiff avers that the "business exclusion" contained in the umbrella policy precludes coverage for the Smiths' negligence claim against Middleton. (Pl.'s Br. at 12–21.) The court addresses Plaintiff's arguments below.

## DISCUSSION

### *Duty To Defend*

Under Alabama law, "[a]n insurance company's duty to defend its insured is

---

**2.** Hereafter, the court refers to the Smiths' action in the Circuit Court of Montgomery County, Alabama as the "underlying state court action."

determined by the language of the insurance policy and by the allegations in the complaint filed against the insured."[3] *Guaranty Nat'l Ins. Co. v. Beeline Stores,* 945 F.Supp. 1510, 1513 (M.D.Ala.1996). "If an insurance policy is ambiguous in its terms, the policy must be construed liberally in favor of the insured, and exceptions to coverage must be interpreted as narrowly as possible in order to provide maximum coverage to the insured." *Id.* However, "if there is no ambiguity, insurance contracts must be enforced as written, and courts should not defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Id.; see also Billups v. Alabama Farm Bureau Mut. Cas. Ins.,* 352 So.2d 1097, 1102 (Ala.1977) (declaring that "[a]mbiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist"). Applying these principles of law, the court now seeks to determine whether Plaintiff owes a duty to defend Middleton under the homeowner's policy or the umbrella policy.

## I. Homeowner's Policy

On October 21, 1995, Plaintiff issued Homeowner's Policy Number 01–61–2329–7 to Middleton,[4] which contains the following relevant language:

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an *occurrence,* we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice....

(Homeowner's Policy Number 01–61–2329–7 at 2–3) (emphasis added.) An "occurrence" is defined by the homeowner's policy as:

[A]n accident, including exposure to conditions, which result in:

a. *bodily injury;* or

b. *property damage;* during the policy period.

(*Id.* at 2) (emphasis added.) "Bodily injury" and "property damage" are defined by the homeowner's policy as follows:

[B]odily injury means physical injury, sickness, or disease to a person....

Bodily injury does *not* include:

c. emotional distress, *mental anguish,* humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

[P]roperty damage means physical damage to or destruction of *tangible property,* including loss of use of this property.

(Id. at 1–2) (emphasis added.) Plaintiff contends that these definitions have not

3. When federal district courts sit in diversity, they must apply the substantive law of the forum state. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Moreover, all Parties to the case sub judice agree that Alabama law applies in this action. Therefore, the court will apply Alabama law regarding insurance contracts in the instant action.

4. Although Middleton asserts a vague argument that other policies issued by Plaintiff and not presently before the court could be relevant in this action (Middleton's Resp. at 8), the court finds no merit in Middleton's argument for several reasons. First, Middleton admits in his Counterclaim against Plaintiff that "[o]n the date of the incident made the basis of the [Smiths'] underlying lawsuit, Hoyt Middleton was covered under State Farm Homeowner Policy Number 01–61–2329–7...." (Middleton's Countercl. at ¶ 4.) Second, it has been well established that the Smiths' causes of action against Middleton accrued during the time period when Homeowner's Policy Number 01–61–2329–7 was in effect. (Pl.' Repl. To Middleton's Resp. at 5; G. Smith Dep. at 302.) Finally, Middleton's argument that other policies may be relevant in this action is based on nothing more than mere allegations and conclusory statements. (Middleton's Resp. at 8.) Such arguments are not sufficient to show a genuine issue of material fact. *See United Steelworkers of Am., AFL—CIO v. Univ. of Ala.,* 599 F.2d 56, 61 (5th Cir.1979). Based on the foregoing, the court finds that Middleton's "other policies" argument is unfounded and that all relevant policies are presently before the court.

been fulfilled so as to trigger coverage under Middleton's homeowner's policy. (Pl.'s Br. at 12–14.) For the reasons discussed below, the court agrees.

■ In their Complaint filed against Middleton, the Smiths claim the following damages: (1) mental anguish; (2) loss of their business; (3) loss of their sole source of automotive parts inventory; (4) loss of their ability to continue business operations; (5) loss of credit; (6) loss of profits; and (7) loss of personal savings. (Smiths' Compl. at 8–10.) The Parties to this action do not dispute the fact that mental anguish damages are clearly not covered under the homeowner's policy. (Homeowner's Policy Number 01–61–2329–7 at 1.) Therefore, the relevant issue for the court to determine is whether the Smiths' other damage claims, which involve economic losses, constitute "physical damage to or destruction of tangible property," so as to trigger coverage under the homeowner's policy. (*Id.* at 2.)

The Alabama Supreme Court has stated that "economic loss" is not tangible "property damage." *American States Ins. Co. v. Martin*, 662 So.2d 245, 248 (Ala.1995). "Strictly economic losses like lost profits, loss of an anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property." *Id.* at 249. Moreover, this court, in interpreting identical policy language as involved in the instant action, has held that loss of business, closure of business, and loss of credit do not constitute physical injury of tangible property or loss of use of

such property. *See State Farm Fire & Cas. Co. v. Sexton & Sexton, Inc.*, 985 F.Supp. 1336, 1340 (M.D.Ala.1997). Therefore, in applying this precedent to the case sub judice, the court finds that the Smiths' Complaint against Middleton involves the same type of economic damages that courts have consistently determined do not constitute tangible property damage. *Id.* Accordingly, the court finds that Plaintiff has no duty under the homeowner's policy to defend or indemnify Middleton against the Smiths' claims against him in the underlying state court action.

## II. Umbrella Policy

### A. "Expected or Intended" Exclusion

On July 1, 1995, Plaintiff issued Personal Liabilit; Umbrella Policy Number 01–C1–8400–1 to Middleton,[5] which contains the following relevant language:

### COVERAGES

b. When the claim or suit is covered by this policy, but not covered by any other policy available to you:

(1) we will defend the suit against you;

### EXCLUSIONS

We will not provide insurance:

2. for personal injury or property damage:

a. which is *either expected or intended by you;*

5. Although Middleton asserts a vague argument that other policies issued by Plaintiff and not presently before the court could be relevant in this action (Middleton's Resp. at 8), the court finds no merit in Middleton's argument for several reasons. First, Middleton admits in his Counterclaim against Plaintiff that "[o]n the date of the incident made the basis of the [Smiths'] underlying lawsuit, Hoyt Middleton was covered under … State Farm Personal Liability Umbrella Policy Number 01–C1–8400–1." (Middleton's Countercl. at ¶ 4.) Second, it has been well established that the Smiths' causes of action against Middleton accrued during the time period when Personal Liability Umbrella Policy Number 01–C1–8400–1 was in effect. (Pl.' Repl. To Middleton's Resp. at 5; G. Smith Dep. at 302.) Finally, Middleton's argument that other policies may be relevant in this action is based on nothing more than mere allegations and conclusory statements. (Middleton's Resp. at 8.) Such arguments are not sufficient to show a genuine issue of material fact. *See United Steelworkers of Am., AFL—CIO v. Univ. of Ala.*, 599 F.2d 56, 61 (5th Cir.1979). Based on the foregoing, the court finds that Middleton's "other policies" argument is unfounded and that all relevant policies are presently before the court.

(Personal Liability Umbrella Policy Number 01–C1–8400–1 at 3–4) (emphasis added.) Plaintiff contends that the "expected or intended" exclusion precludes coverage under the umbrella policy for the Smiths' claims against Middleton for tortious interference with business relations, wantonness, and conspiracy. (Pl.'s Br. at 16–19.) For the reasons stated herein, the court finds that the "expected or intended" exclusion does not preclude coverage for the tortious interference with business relations claim, but does preclude coverage for the conspiracy and wantonness claims.

▆▆ Initially, the court notes that "Alabama courts have consistently construed insurance provisions which limit coverage to injuries not 'intended or expected' by the insured as precluding coverage only where the insured subjectively intended or expected its action to cause injury." *Universal Underwriters Ins. Co. v. Stokes Chevrolet,* 990 F.2d 598, 603 (11th Cir. 1993) (citing *White v. Maryland Cas. Co.,* 589 So.2d 1294, 1296 (Ala.1991); *Watson v. Alabama Farm Bureau Mut. Cas. Ins. Co.,* 465 So.2d 394, 396 (Ala.1985); *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Dyer,* 454 So.2d 921, 925–26 (Ala.1984)); *see also Allstate Indem. Co. v. Lewis,* 985 F.Supp. 1341, 1346 (M.D.Ala.1997) (holding that the subjective intent standard applies when interpreting "intended or expected" exclusions). Thus, the court must apply this subjective intent standard to the case sub judice because the exclusion at issue contains the requisite "either expected or intended by you" language. (Personal Liability Umbrella Policy Number 01–C1–8400–1 at 4.) Moreover, in applying the subjective intent standard, the court can determine coverage preclusion under the umbrella policy only if the allegations of the Smiths' Complaint demonstrate that Middleton possessed the specific intent to injure the Smiths or that Middleton possessed a high degree of certainty that injury to the Smiths would result from his actions. *See Stokes Chevrolet,* 990 F.2d at 603 (citing *Dyer,* 454 So.2d at 925.) Based on the foregoing, the court now applies the subjective intent standard to each claim

that Plaintiff contends is precluded by the "expected or intended" exclusion in order to determine whether or not coverage exists under the umbrella policy.

### 1. Tortious Interference With Business Relations

▆▆ In Count Two of their Complaint, the Smiths allege that Middleton "wantonly, spitefully, and maliciously" interfered with the business relationship that existed between the Smiths and SAW. (Smiths' Compl. at 8.) As a result of Middleton's actions, the Smiths claim, inter alia, that they suffered mental anguish damages. (*Id.*) The court notes that mental anguish damages are clearly covered as "personal injury" damages under the umbrella policy. (Personal Liability Umbrella Policy Number 01–C1–8400–1 at 2) Therefore, the issue for the court to now determine is whether the Smiths' tortious interference claim contains allegations that Middleton specifically intended to cause the Smiths to suffer mental anguish damages or that Middleton possessed a high degree of certainty that the Smiths would suffer mental anguish damages as a result of his actions. *See Stokes Chevrolet,* 990 F.2d at 603 (citing *Dyer,* 454 So.2d at 925.)

▆▆ After a careful examination of the Smiths' Complaint, the court notes that the specific intent standard is not met. Although the Smiths' allege that Middleton interfered with their business relations "for the purpose of having and/or destroying [the Smiths'] business," the allegation contains no language claiming that Middleton specifically intended or expected to cause mental anguish damages. (Smiths' Compl. at 8.) Furthermore, even though Plaintiff correctly asserts that the Smiths' claim of tortious interference with business relations contains an element of intent, the court notes that this element can be satisfied without a showing of specific intent to injure. *See Stokes Chevrolet,* 990 F.2d at 602 (citing *Century 21 Academy Realty v. Breland,* 571 So.2d 296, 297–98 (Ala.1990); *cf. Creel v. Davis,* 544 So.2d 145, 153

(Ala.1989) (refusing to require plaintiffs to show malice in order to establish claim for intentional interference with contractual or business relations)). In other words, the Smiths can recover mental anguish damages from their tortious interference count without proving that Middleton specifically intended or expected to cause them to suffer mental anguish damages. *See id.* Accordingly, the court finds that because the subjective intent standard is not met, the "expected or intended" exclusion contained in the umbrella policy does not preclude coverage for the Smiths' claim of tortious interference against Middleton.

### 2. Conspiracy

In Count Three of their Complaint, the Smiths allege that "J. Hoyt Middleton and Bill Ward [,agent for SAW,] have contrived, combined, federated, and *conspired* amongst themselves to do the acts hereinabove [sic] described with the *intention* of forcing the Plaintiffs out of business." (Smiths' Compl. at 9) (emphasis added.) "Because a civil conspiracy is an 'agreement' or 'understanding' between two or more persons to accomplish some unlawful end, or some lawful end by unlawful means, a conspiracy perforce includes an element of intent to injure...." *Lewis,* 985 F.Supp. at 1349 (citing *Snyder v. Faget,* 295 Ala. 197, 326 So.2d 113, 119 (1976)) In other words, the Smiths cannot succeed on their conspiracy claim without showing that Middleton subjectively intended to injure them. *See id.* Therefore, the Smiths' conspiracy claim meets the subjective intent test and, thus, is precluded from coverage under the "expected or intended" exclusion contained in the umbrella policy.

### 3. Wantonness

In Count Four of their Complaint, the Smiths allege that Middleton is liable for wantonness because he committed wrongful acts upon the Smiths and because he "consciously engaged in [these acts] with *knowledge* of the existing conditions and *conscious* that from the doing of such acts ... an *injury would probably result.*" (Smiths' Compl. at 9) (emphasis added.) The court finds that this allegation clearly meets the subjective intent standard because it contains language asserting that Middleton possessed a high degree of certainty that injury to the Smiths would result from his actions. *See Stokes Chevrolet,* 990 F.2d at 603 (citing *Dyer,* 454 So.2d at 925.) Under Alabama law, such allegations are deemed to fulfill the subjective intent test and, thus, are precluded from coverage under "expected or intended" exclusions. *See id.; see also Lewis,* 985 F.Supp. at 1349 (declaring that "[t]o the extent wantonness connotes that the injury was specifically expected by the insured, the concept obviously falls within the subjective component of the definition of an intentional act"). Therefore, the court finds that coverage is precluded for the Smiths' wantonness claim against Middleton because the Smiths allege that Middleton subjectively expected injury to result from his acts, thereby causing the Smiths' allegation to fall under the "expected or intended" exclusion contained in the umbrella policy.

### B. "Business Exclusion"

In addition to the "expected or intended" exclusion discussed above, the umbrella policy also contains the following relevant exclusionary language:

> We will not provide insurance: for any loss caused by your business operations or arising out of business property:

(Personal Liability Umbrella Policy Number 01–C1–8400–1 at 4.) Under the umbrella policy, "business" is defined as "a trade, profession, or occupation." (Id. at 1.) Furthermore, "business property" is defined under the umbrella policy as "premises on which a business is conducted, or *property rented or held for rental in whole or in part to others.*" (*Id.*) (emphasis added.) Plaintiff contends that this "business exclusion" precludes coverage under the umbrella policy for the Smiths' negligence claim against Middleton. (Pl.'s

Br. at 19–21.) For the reasons stated herein, the court agrees.

In Count Five of their Complaint, the Smiths' allege that Middleton "had a *duty to exercise reasonable care in performing the contracts and engaging in the business relationships* [with the Smiths] so as not to injure or damage the [Smiths] . . . ." (Smiths' Compl. at 10) (emphasis added.) Further, the Smiths allege that Middleton is liable for negligence because he breached this duty that arose solely out of "performing contracts and engaging in business relationships" with the Smiths. *Id.* The Smiths concede in their Response that "Middleton's duties are most fairly understood as arising outside his contract with the Smiths" (Smiths' Resp. at 21) and, thus, the only remaining issue before the court is whether Middleton's alleged duty arising out of "engaging in business relationships" with the Smiths is precluded from coverage under the "business exclusion" contained in the umbrella policy. (Smiths' Compl. at 10.)

The Alabama Supreme Court addressed the subject of "business exclusions" in *Vallas v. Cincinnati Ins. Co.* and noted that:

> Business in its broad sense embraces anything about which a person may be busy, and in its usual sense, signifies an undertaking or calling for gain, profit, advantage or livelihood.

624 So.2d 568, 571 (Ala.1993). This definition of "business" would certainly encompass the Smiths' allegation that Middleton's duty arose out of "engaging in business relations" with them. (Smiths' Compl. at 10.) Moreover, the court notes that the "business relations" between Middleton and the Smiths primarily consisted of the Smiths' purchase of Middleton's auto parts business and their lease of Middleton's building. (Smiths' Resp. at 4.) The Smiths "do not allege here that Middleton breached the purchase contract which kicked off their business relationship" (Smiths' Resp. at 20–21) and, thus, the only remaining "business relationship" that could give rise to a duty is the Smiths' lease of Middleton's building.

(Smiths' Compl. at 10.) However, any duty arising from said lease is unambiguously precluded from coverage under the "business exclusion," which states that no coverage is provided "for any loss . . . arising out of business property." (Personal Liability Umbrella Policy Number 01–C1–8400–1 at 4.) Accordingly, the court finds that coverage is precluded for the Smiths' negligence claim against Middleton because the alleged duty owed by Middleton to the Smiths falls under the "business exclusion" contained in the umbrella policy.

### Duty To Indemnify

The court finds that because of the reasons stated in Section I of this opinion, Plaintiff has no duty to indemnify Middleton under the homeowner's policy. However, for the reasons set forth in *Allstate Indemnity Co. v. Lewis*, 985 F.Supp. 1341, 1349–50 (M.D.Ala.1997), the court finds that Plaintiff's duty to indemnify Middleton under the umbrella policy is not ripe for adjudication until Middleton is in fact held liable in the underlying state court action, which is currently pending resolution in the Circuit Court of Montgomery County, Alabama. (Middleton's Countercl. at ¶ 6.)

### ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Plaintiff's Motion For Summary Judgment be and the same is hereby GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED with respect to Plaintiff's duty to defend under Homeowner's Policy Number 01–61–2329–7.

2. DENIED with respect to Plaintiff's duty to defend, under Personal Liability Umbrella Policy Number 01–C1–8400–1, the Smiths' tortious interference with business relations claim against Middleton.

3. GRANTED with respect to Plaintiff's duty to defend, under Personal

Liability Umbrella Policy Number 01–C1–8400–1, the Smiths' conspiracy, wantonness, and negligence claims against Middleton.

4. GRANTED with respect to Plaintiff's duty to indemnify under Homeowner's Policy Number 01–61–2329–7.

5. DENIED with respect to Plaintiff's duty to indemnify under Personal Liability Umbrella Policy Number 01–C1–8400–1.

The Clerk of Court is DIRECTED to transmit a copy of this Order to the Parties via facsimile and United States Mail.